EDITH MACINNIS *vs.* AETNA LIFE & CASUALTY CO.

Middlesex.    March 8, 1988. — August 15, 1988.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Insurance*, Motor vehicle insurance, Underinsured motorist, Consent to settlement. *Practice, Civil*, Summary judgment.

An insurer was required to prove material prejudice resulting from its insured's violation of a consent-to-settlement provision in a policy of automobile insurance in order to rely on that violation as an affirmative defense to the insured's claim for underinsured motorist coverage. [222-223]

Although an insurer that paid benefits pursuant to the underinsured motorist coverage of a policy of automobile insurance would have subrogation or repayment rights against the underinsured tortfeasor, such an insurer would not be entitled to reduce its liability or seek repayment from the compensation the policyholder received from the tortfeasor's automobile liability insurer. [223-226]

Discussion of the right of an insurer, acting pursuant to a consent-to-settlement provision of a policy of automobile insurance, to withhold its consent to a settlement of its insured's claim against an underinsured tortfeasor. [226-229]

In a civil action where the parties disagreed on an issue of material fact, an order of summary judgment was held to be inappropriate and the case was remanded for further proceedings. [229]

CIVIL ACTION commenced in the Superior Court Department on March 25, 1983.

The case was heard by *Hiller B. Zobel*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Philip S. Shaw (Edward M. Mahlowitz* with him) for the plaintiff.

*Linda A. Borer (Victoria A. Casey* with her) for the defendant.

ABRAMS, J. The plaintiff, Edith MacInnis, appeals from a grant of summary judgment in the Superior Court for the defendant, Aetna Life & Casualty Co. (Aetna). MacInnis brought this action seeking declaratory relief concerning her rights pursuant to the underinsured motorist coverage in her automobile insurance policy with Aetna.[1] The Superior Court judge ruled that MacInnis violated the terms of the policy and forfeited her coverage by settling her claim against the underinsured tortfeasor without first obtaining Aetna's consent to the settlement.[2] We reverse and remand for further proceedings.

MacInnis was injured in an automobile accident in July, 1980. She was a passenger in her husband's automobile, which was insured by Aetna. The MacInnis vehicle was stopped at a red light. The tortfeasor, Joseph Salvidio, drove his vehicle into the rear of the MacInnis automobile. MacInnis suffered serious back injury, including a ruptured disc. There is no dispute that the tortfeasor was 100% at fault.

The tortfeasor carried bodily injury liability insurance in the amount of $30,000. In October, 1981, MacInnis settled her claim against the tortfeasor for the full amount of his liability coverage. The tortfeasor's insurer promptly paid MacInnis $30,000. The parties agree that the settlement released the tortfeasor from all further liability. MacInnis did not obtain Aetna's consent prior to the settlement.

On November 5, 1981, MacInnis notified Aetna of the settlement[3] and her intention to initiate a claim under her coverage for injury caused by an underinsured motorist. She submitted medical reports to establish that her damages exceeded the

---

[1] The plaintiff actually is covered by her husband's policy, a fact not relevant to the issues in this case.

[2] The "consent-to-settlement" provision in the policy reads as follows: "If an injured person settles a claim as a result of an accident covered under this Part, we will pay that person only if the claim was settled with our consent. . . . We will not, however, unreasonably withhold our consent."

[3] There is some suggestion in the record that Aetna had notice of the settlement before it became final. However, MacInnis does not assert any theory of estoppel or waiver of the consent to settlement provision in the policy. These issues remain open on remand. See 3 I.E. Schermer, Automobile Liability Insurance § 35.09 (2d ed. 1988 rev.).

amount of the tortfeasor's liability coverage.[4] Although the record contains no stipulation as to her damages, Aetna does not dispute that the damages exceed $55,000, the combined sum of the tortfeasor's liability policy and MacInnis's underinsured motorist coverage in the amount of $25,000. Nevertheless, on August 27, 1982, Aetna denied coverage on the ground that MacInnis had settled her claim with the tortfeasor without Aetna's consent.

On March 25, 1983, MacInnis instituted the present action, seeking a declaration of entitlement to the underinsured motorist coverage in her policy. Each party moved for summary judgment. The judge granted Aetna's motion. He ruled: "The policy requires defendant's consent as a prerequisite to settlement with any third party. The consequence of a failure to obtain consent is exoneration of defendant's obligation to pay so-called underinsured benefits."

On appeal, MacInnis argues that her violation of the consent-to-settlement provision caused no prejudice to Aetna and therefore should not bar her recovery. Aetna argues that compliance with the consent-to-settlement provision is a condition precedent to recovery, and that failure to comply forfeits coverage. We conclude that Aetna must demonstrate material prejudice resulting from MacInnis's violation of the consent-to-settlement provision in order to rely on that violation as an affirmative defense to MacInnis's claim for underinsured motorist benefits. Because the issue of prejudice turns on resolution of disputed questions of fact, summary judgment was inappropriate.

1. *Prejudice standard.* A consent-to-settlement provision is valid in the *un*insured motorist provisions of a policy. *Aetna Casualty & Sur. Co.* v. *Poirier*, 371 Mass. 257, 261 (1976). The purpose of such a provision is to assure that the policyholder does nothing to impair its insurance company's rights to subrogation or repayment against the tortfeasor. See, e.g., *Prudential Property & Casualty Ins. Co.* v. *Nayerahamadi*, 593 F. Supp. 216, 218 (E.D. Pa. 1984), and sources cited; *Kapadia*

[4] MacInnis previously submitted medical reports to Aetna in connection with a claim under the mandatory personal injury protection coverage in the policy.

v. *Preferred Risk Mut. Ins. Co.*, 418 N.W.2d 848, 851-852 (Iowa 1988) and cases cited; *Bazinet* v. *Concord Gen. Mut. Ins. Co.*, 513 A.2d 279, 282 (Me. 1986). We think that the same rationale applies in *under*insured motorist coverage. Thus, we conclude that the consent-to-settlement provision is valid.

However, not all valid policy provisions are conditions precedent to recovery. For example, a policyholder's violation of a valid notice of claim provision defeats coverage only if the insurer proves "that the breach resulted in prejudice to its position." *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. 278, 282 (1980). Because the purpose of a consent-to-settlement provision is essentially similar to that of a notice of claim provision (both give an insurer notice and an opportunity to protect its interests), the prejudice standard should apply to both. Accordingly, an insurer must prove material prejudice resulting from its policyholder's violation of a consent-to-settlement provision in order to rely on that violation as an affirmative defense to a claim for underinsured motorist coverage benefits. See, e.g., *Prudential Property & Casualty Ins. Co.* v. *Nayerahamadi, supra* at 218; *Tucker* v. *Seward*, 400 So. 2d 505, 506 (Fla. Dist. Ct. App. 1981); *Kapadia* v. *Preferred Risk Mut. Ins. Co., supra* at 852; *Newark Ins. Co.* v. *Ezell*, 520 S.W.2d 318, 321 (Ky. Ct. App. 1975); *Bazinet* v. *Concord Gen. Mut. Ins. Co., supra* at 282. See also *Hoel* v. *Crum & Forster Ins. Co.*, 51 Ill. App. 3d 624, 628-629 (1977); *Branch* v. *Travelers Indem. Co.*, 367 S.E.2d 369, 371 (N.C. Ct. App. 1988). See generally 3 I.E. Schermer, Automobile Liability Insurance § 35.09 (2d ed. 1988 rev.); 2 A.I. Widiss, Uninsured and Underinsured Motorist Insurance § 43.5 (2d ed. 1987). A contrary result would exalt form over substance. See *Southeastern Fidelity Ins. Co.* v. *Earnest*, 395 So. 2d 230, 231 (Fla. Dist. Ct. App. 1981).

2. *Aetna's repayment rights.* Having concluded that Aetna must demonstrate material prejudice, we determine next whether Aetna had any subrogation or repayment rights against the tortfeasor that the settlement may have prejudiced. The plaintiff argues that no such rights exist. We disagree.

The statutory language in effect in 1980 required automobile insurers to offer policyholders the option of purchasing underinsured motorist coverage. G. L. c. 175, § 113L (1), as amended by St. 1973, c. 380. The statute further provided: "In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made . . . ." G. L. c. 175, § 113L (4), inserted by St. 1968, c. 644.[5] Because § 113L required insurers to offer underinsured motorist coverage in 1980 (even though policyholders did not have to accept it),[6] we conclude that the Legislature intended a repayment right to apply to *under*insurance coverage, as well as to mandatory *un*insured motorist coverage.[7]

However, we disagree with Aetna's assertion that its rights in this case are the same as in *Aetna Casualty & Sur. Co.* v. *Poirier, supra,* a case involving *un*insured motorist coverage. In *Poirier*, the policyholder settled a claim with an *un*insured tortfeasor for $5,000 without the insurer's consent. The policyholder then sought to recover an additional $5,000, the limit of her *un*insured motorist coverage, from her insurer. If the insurer had been required to pay the additional $5,000, it

---

[5] The same subrogation or repayment provision appears in the current version of G. L. c. 175, § 113L (4) (1986 ed.).

[6] In 1981, policyholders became obligated to purchase underinsured motorist coverage. G. L. c. 175, § 113L (1), as appearing in St. 1980, c. 532 (effective January 1, 1981). See *Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 39 (1986).

[7] In the present case Aetna also asserts a right to recovery against the tortfeasor under the general subrogation provision in the policy. The applicable provision states: "Sometimes we may make a payment under this policy to you or to someone else who has a separate legal right to recover damages from others. In that case, those legal rights may be exercised by us . . . . If we then recover more than we paid, we will pay that person the excess, less his or her proportionate share of the costs of recovery, including reasonable attorneys' fees." Our conclusions as to Aetna's rights are identical whether they emanate from the statute or the policy.

would have been prejudiced, because a policyholder is not entitled to *un*insured motorist coverage "to the extent that there is recovery from another alleged tortfeasor." *Id.* at 261-262.[8] In other words, the provider of *un*insured motorist coverage was entitled to repayment from the first $5,000 of recovery against the tortfeasor, and the policyholder's receipt of that money relieved the insurer of its obligation to pay *un*insured motorist benefits in the amount of $5,000.

Unlike *un*insured motorist coverage, *under*insured motorist coverage entitles the policyholder to recover from *two* sources, the tortfeasor *and* the provider of underinsured motorist coverage. The policy provides that the insurer will pay underinsured motorist benefits "if the limits of the responsible person's auto insurance policies, bonds, or self-insurance are less than the amount of the damages due the injured person. In that case, [Aetna] will pay the balance of the damages up to the limits shown for this Part on [the] Coverage Selections Page."[9] A policyholder whose damages exceed the combined limits of the tortfeasor's insurance and his or her own underinsured motorist coverage, "is entitled to be compensated to the extent of the [tortfeasor's] automobile liability insurance, plus, as a minimum, an amount equal to his [or her] underinsurance coverage." *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 372 (1988). As a result, the provider of *under*insured motorist coverage is not entitled to reduce its liability or seek repayment of benefits it pays from the compensation the policyholder

[8] The rationale of *un*insured motorist coverage is that it compensates injured persons in cases where the responsible tortfeasor is presumed to have *no* insurance or other assets with which to pay compensation to the victim. Thus *any* recovery from an *un*insured tortfeasor goes first to repay the insurer for benefits it pays to the policyholder.

[9] General Laws c. 175, § 113L, defines underinsured motorist coverage as "protection of persons . . . who are legally entitled to recover damages from owners or operators of insured motor vehicles . . . whose policies or bonds are insufficient in limits of liability to satisfy said damages, to the extent that said damages exceed said limits of liability subject to the terms of the policy."

receives from the tortfeasor's automobile liability insurance. See *id.*[10]

3. *Aetna's right to withhold consent.* The question whether Aetna suffered prejudice in this case depends on how its repayment rights operate in the context of settlement with the underinsured tortfeasor.[11] Such settlement typically consists of payment of some or all of the tortfeasor's liability coverage to the injured person and release or termination of further claims against the tortfeasor, including the insurer's claim for repayment. That is what occurred in this case. If Aetna had no right to withhold its consent from the settlement, then it could suffer no prejudice from the plaintiff's failure to seek that consent. As explained below, the question whether Aetna could have withheld its consent turns on disputed issues of fact that must be determined on remand.

a. *Consent where the tortfeasor has no substantial assets.* The need for underinsured motorist coverage is based on a legislative determination that underinsured tortfeasors typically have no substantial assets other than their liability coverage with which to pay compensation. In such circumstances, the injured person's insurer, which may not unreasonably withhold its consent to a settlement, see note 2, *supra*, must give its consent to a proposed settlement and pay the policyholder whatever underinsured motorist benefits are due under the pol-

---

[10] In Bertassi we recognized that the insurer may reduce the amount of its liability by amounts the policyholder recovers from sources other than the underinsured tortfeasor motorist's liability insurance. *Bertassi* v. *Allstate Ins. Co., supra.*

[11] "The relationship between an injured claimant, the alleged tortfeasor, the tortfeasor's insurer, and the insurer providing underinsured motorist insurance is often considerably more complicated than that which prevails when a tortfeasor is uninsured. Viewed at the most fundamental level, the relationship is always going to be at least a trilateral one (involving the injured claimant seeking indemnification for injuries in an accident, the tortfeasor's insurer, and the underinsured motorist insurance carrier) rather than bilateral (the injured claimant and the uninsured motorist insurer)." 2 A.I. Widiss, Uninsured and Underinsured Motorist Insurance § 43.1, at 115 (2d ed. 1987). See J.F. Buckley, Underinsured Motorist Coverage: Legislative Solutions to Settlement Difficulties, 64 N.C.L. Rev. 1408, 1410-1411 (1986).

icy. The settlement terminates the insurer's repayment claim against the tortfeasor, but causes no prejudice because the tortfeasor has no remaining substantial assets with which to reimburse the insurer.[12]

b. *Consent where the tortfeasor has substantial assets.* If the underinsured tortfeasor has substantial assets, a provider of underinsured motorist coverage may reasonably wish to withhold its consent from a proposed settlement in order to protect its statutory and contractual repayment rights.[13] The procedure for protecting these rights requires the policyholder to comply with the consent-to-settlement provision in the policy. After receiving notice of a proposed settlement, the insurer decides whether to consent by assessing "relevant factors, such as the amount of the settlement, the amount of liability insurance remaining, if any, the amount of assets held by the tortfeasor and the likelihood of their recovery via subrogation, the total amount of the insured's damages, and the expenses

---

[12] Of course, the insurer is entitled to notice of the proposed settlement so that it can investigate the tortfeasor's assets.

[13] The insurer cannot withhold consent on the theory that the policyholder could recover fully by pursuing litigation against the tortfeasor's excess assets. The policyholder has the right to pursue such litigation, but no duty to do so. The statute and the policy provide that underinsured motorist protection compensates damages in excess of the limits of the tortfeasor's automobile liability coverage, regardless of any other assets of the tortfeasor. See note 9, *supra.* To force an unwilling policyholder to attempt to recover its excess damages from the tortfeasor through litigation would contradict the express terms of both the statute and the policy. It also would delay compensation to an injured victim and force him or her to bear the expense of a lawsuit for the purpose of protecting the insurance company's interests.

Similarly, a policyholder's decision to accept a settlement offer for less than the limit of the tortfeasor's liability insurance does not constitute reasonable grounds to withhold consent. The insurer is required to pay only for damages in excess of the tortfeasor's total liability coverage, and not for "damages [which go] uncompensated because the insured has chosen to settle with the tortfeasor for less than the liability limits." See *Schmidt v. Clothier,* 338 N.W.2d 256, 261 (Minn. 1983). The rationale for this rule is clear: "Practically, the insured would have no incentive to obtain the best settlement if he or she [were] assured of recovering the 'gap' from the underinsurer. Use of underinsurance benefits in this way runs counter to the agreement of the parties. . . . It might also lessen the incentive of the liability carrier to make its best offer to the claimant." *Id.*

and risks of litigating the insured's cause of action." *Schmidt* v. *Clothier*, 338 N.W.2d 256, 263 (Minn. 1983). If, after assessment, the insurer wishes to preserve its rights, it may do so by (1) substituting a payment to the policyholder in an amount equal to the tentative settlement, and (2) paying the policyholder the underinsurance benefits due under the policy prior to release of the tortfeasor.[14] See *Hamilton* v. *Farmers Ins. Co.*, 107 Wash. 2d 721, 732-734 (1987); *Vogt* v. *Schroeder*, 129 Wis. 2d 3, 19-22 (1986); *Schmidt* v. *Clothier*, *supra.* The insurer then succeeds to the rights of its policyholder against the tortfeasor and is free to pursue the tortfeasor in an attempt to recover assets in addition to the settlement offer.[15] Of course, the insurer may decide for a variety of reasons that pursuing the tortfeasor is neither practical nor economical. In such cases, the insurer simply consents to the settlement, pays the policyholder the benefits due under the policy, and forgoes repayment. See *id.*

This procedure is fair. It allows the policyholder to negotiate what he or she considers to be the best possible settlement with the tortfeasor and to receive immediately an amount equal to that settlement. At the same time, it allows the insurer, at its option, to seek reimbursement for the underinsured motorist benefits it must pay to the policyholder by making sure that such payment occurs before the tortfeasor is released. If the insurer opts to enforce its repayment rights against the tortfeasor's assets, the insurer bears the risk and the expense attendant to that option. The policyholder, who was willing and entitled to accept the sum of the settlement offer plus his

---

[14] We reject the position that the insurer can protect its rights merely by paying the underinsurance benefits prior to release of the tortfeasor. See *Vogt* v. *Schroeder*, 129 Wis. 2d 3, 27-36 (1986) (Steinmetz, J., concurring). Allowing a "preemptive strike" of this sort would depress the amount the tortfeasor would be willing to offer in settlement to the injured person.

[15] Amounts the insurer recovers over the amount of the substituted settlement payment go first to reimburse the insurer for the underinsurance benefits it paid. Cf. *Bertassi* v. *Allstate Ins. Co.*, *supra.* If the insurer recovers an amount greater than the sum of the substituted settlement and the underinsurance benefits, the policyholder is entitled to the excess, less his or her proportionate share of the costs of recovery, including reasonable attorney's fees. See note 7, *supra.*

or her underinsured motorist benefits, receives that amount and does not have to be a party to further litigation.

4. *Conclusion.* The issue whether MacInnis's settlement of her claim without Aetna's consent caused prejudice to Aetna turns on whether the tortfeasor had sufficient assets at the time of the settlement, such that it would have been reasonable for Aetna to opt to pay MacInnis her coverage, plus an amount equal to the settlement offer, and take over MacInnis's claim.[16] The parties disagree as to the value of the tortfeasor's assets at the time of the settlement in 1981. Because this is a disputed issue of material fact, summary judgment was inappropriate. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). On remand Aetna bears the burden of proving material prejudice to establish its affirmative defense to MacInnis's claim for underinsured motorist coverage benefits.

*So ordered.*

---

[16] The likelihood of success of such a claim, the total amount of the plaintiff's damages in 1981, and the cost of obtaining a judgment for the amount of those damages, also are relevant in determining whether Aetna reasonably could have withheld its consent.