NEW ENGLAND EXTRUSION, INC., Plaintiff,

v.

AMERICAN ALLIANCE INSURANCE CO., Defendant.

Civ. A. No. 93–30213–MAP.

United States District Court, D. Massachusetts.

Feb. 2, 1995.

Paul S. Weinberg, Robinson, Donovan, Madden & Barry, Springfield, MA, for plaintiff.

John J. Davis, Morrison, Mahoney & Miller, Boston, MA, for defendant.

## MEMORANDUM REGARDING CROSS–MOTIONS FOR SUMMARY JUDGMENT

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiff New England Extrusion, Inc. ("New England") claims that its insurer, defendant American Alliance Insurance Company ("American Alliance"), breached its insurance policy with New England by denying a claim brought by New England under the policy (Count I). New England further claims that defendant denied the claim without full investigation, failed to pay the claim after liability became reasonably clear, and did not respond in a timely fashion, all in violation of Mass.Gen.L. ch. 93A, § 11 and ch. 176D, § 3(9) (Count II).

American Alliance asserts that it was entitled to disclaim liability under the loss because New England violated both the voluntary payment and notice of loss provisions set forth in the insurance agreement. In response, New England maintains both that it complied with the insurance agreement's provisions and, alternatively, if it did not comply, that defendant has demonstrated no prejudice. The defendant has moved for summary judgment on Count I (breach of contract) and Count II (violations of ch. 93A and ch. 176D) of the plaintiff's complaint. Plaintiff has filed a cross-motion for summary judgment on Count I. The parties do not dispute the dispositive facts in this case.

The court will deny American Alliance's motion for summary judgment on Counts I and II of the complaint and allow the plaintiff's motion for summary judgment on Count I. Massachusetts law requires an insurer who is disclaiming liability based on an insured's breach of a voluntary payment provision or notice requirement to demonstrate actual prejudice in order to be relieved of liability under the insurance policy. No such prejudice is claimed or shown by the defendant. Therefore, American Alliance's denial of New England's claim on the grounds that plaintiff had breached the voluntary payment and/or notice provisions of the policy was improper, and its motion for summary judgment must be denied.

The court's reasoning is set forth below.

### II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the record reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Commercial Union Ins. v. Walbrook Ins. Co.*, 7 F.3d 1047, 1050 (1st Cir.1993) (citing *Mesnick v. General Electric Co.*, 950 F.2d 816 (1st Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)). The facts must be viewed in the light most favorable to the nonmoving party. *Id.* The interpretation of contractual provisions in an insurance policy is properly a matter of law. *Allstate Ins. Co.*

*v. Bearce,* 412 Mass. 442, 589 N.E.2d 1235 (1992) (citing *Cody v. Connecticut General Life Ins. Co.,* 387 Mass. 142, 146, 439 N.E.2d 234 (1982)). Since neither party disputes any of the material facts, the court's task is merely to determine which of the parties is entitled to prevail as a matter of law.

## III. *FACTUAL BACKGROUND*

New England is a manufacturer of polyethylene film, which it supplies to packagers in the food industry. In November, 1992, New England sold film to Union Industries ("Union"), which used the film in food packaging. The film supplied to Union proved to be defective, and the defect resulted in contamination of food packaged by Union.

In late 1992 or early 1993, Union notified New England that the film was defective and that Union had suffered substantial losses as a result of the defective New England product. New England believed that coverage would exist for its losses under one of two commercial liability insurance policies. New England had purchased a commercial general liability policy of insurance, effective December 31, 1991 through December 31, 1992, from American Alliance through the Massamont Insurance Agency ("Massamont"). Subsequently, New England purchased a similar policy from Central Mutual Insurance Company ("Central"), effective from December 31, 1992 to December 31, 1993, through the Borawski Agency ("Borawski"). Unsure as to which policy might cover its losses, New England contacted Borawski in January 1993 and notified it of Union's claim. Central began an investigation of the claim, but suggested that the loss suffered by Union might not be covered under its policy, because it had occurred before the Central policy took effect. At the suggestion of Borawski, New England then called Massamont to inform it that there was a possible future claim against New England's policy with American Allied. Massamont sent a written notice to American Alliance via a "Loss Notice Form" on February 10, 1993. In March 1993, Central informed New England that the loss sustained by Union as a result of the defective New England product would probably not be covered by the Central policy because the material had been manufactured, delivered, and processed into packaging material prior to the inception date of the Central policy's coverage.

On March 23, 1993, Union, concerned about its ability to receive compensation for approximately $115,000 in sustained losses, met with New England to resolve its claim for damages. Union was, at the time, New England's largest customer, accounting for at least fifteen percent of New England's sales. New England agreed to reimburse Union for its damages by allowing Union to take a percentage off future payments that would be owed to New England. In order to minimize the financial hardship of the reimbursement, Union agreed to take approximately three months to recoup the full amount of its loss from New England and arranged to deduct 25% of the invoice amount from the two payments made each month until the full amount was recovered. This agreement was confirmed in writing on March 24, 1993. On March 29, 1993, New England called Massamont and informed them that Central was taking the position that the claim fell outside the terms of its policy with New England and that Union was upset about the loss it had sustained as a result of the defective film. Massamont then faxed to American Alliance another copy of the General Liability Loss Notice which had previously been sent to American Alliance on February 10, 1993.

On April 1, New England sent Massamont a letter stating that it was issuing a credit to Union in the amount of $115,527.29. This letter was immediately faxed to American Alliance. New England then allowed Union to deduct 25% from an invoice dated March 15 and from five subsequent payments as they fell due. After taking its final credit on an invoice dated May 25, 1993, Union was fully reimbursed for the loss it sustained as a result of New England's defective product.

American Alliance retained an insurance investigator to look into New England's claim in May 1993. The investigators contacted New England and Union personnel and reported to American Alliance on the nature and date of the losses claimed by Union. On July 20, 1993, American Alliance denied coverage for New England's claim. The cited

grounds for denial were that the policy did not respond to the type of claim presented by Union. New England retained counsel who advised American Alliance that its coverage position was erroneous. At the suggestion of New England's counsel, American Alliance agreed to reevaluate its position. On August 26, after reviewing its position on the claim, American Alliance declined to reimburse New England, contending that New England had violated the "voluntary payment provision" of its insurance contract by independently settling the claim with Union and agreeing to permit Union to take the series of credits until it was fully reimbursed for its losses.

## IV. *DISCUSSION*

■ Defendant contends that it is relieved of its obligation to compensate New England for its loss under the insurance contract by New England's failure to comply with the notice and voluntary payment provisions of the insurance contract. Specifically, the defendant asserts that the plaintiff failed to timely notify American Alliance of the claim by Union and that the plaintiff voluntarily settled the claim without American Alliance's consent.

■ It is well settled under Massachusetts law that an insurer attempting to be relieved of its obligations under a liability policy on the ground of untimely notice or violation of a voluntary payment provision must prove that the breach resulted in actual prejudice to its position. *MacInnis v. Aetna Life and Cas. Co.*, 403 Mass 220, 223, 526 N.E.2d 1255 (1988); *Johnson Controls, Inc. v. Bowes*, 381 Mass 278, 283, 409 N.E.2d 185 (1980). The purpose behind notice and consent-to-settlement provisions is to enable the insurer to protect its interests. *Darcy v. Hartford Ins. Co.*, 407 Mass. 481, 489–90, 554 N.E.2d 28 (1990) (citing *Johnson Controls*, 381 Mass at 282, 409 N.E.2d 185; *MacInnis*, 403 Mass. at 223, 526 N.E.2d 1255). Such provisions protect an insurer from being placed in a " 'substantially less favorable position ... [by forcing it] to pay a claim against which it hasn't had an opportunity to defend effectively.' " *Johnson Controls*, 381 Mass. at 282, 409 N.E.2d 185 (quoting *Brake-*

*man v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193, 197 (1977)). Where, however, an insured's breach of a policy provision has not frustrated the underlying purpose of the provision, the insurer cannot be permitted to disclaim coverage. *Id.* In other words, in order to deny coverage to an insured on the grounds that it has breached the voluntary payment and notice provisions of its policy, an insurer must show that the insured's breach seriously impaired the insurance company's investigation or defense of the action, thereby prejudicing its interest in avoiding payment on claims that it cannot then adequately defend. *Darcy*, 407 Mass at 489–90, 554 N.E.2d 28.

Despite this clear authority, American Alliance argues that the Supreme Judicial Court's ruling in *Augat, Inc. v. Liberty Mutual Insurance Company* relieves it of liability in this case. *Augat, Inc. v. Liberty Mut. Ins. Co.*, 410 Mass. 117, 571 N.E.2d 357 (1991). In *Augat*, the plaintiff, faced with a civil suit for negligent discharge of contaminated water, entered into a consent judgment with the Commonwealth and only notified its insurance company of the claim after final judgment had been entered. *Id.* at 118–19, 571 N.E.2d 357. American Alliance's reliance on *Augat*, however, is misplaced. In holding that Liberty Mutual was not liable for coverage of the plaintiff's claims under the policy, the court, in *Augat*, did nothing to disturb the Massachusetts requirement that an insurance company show prejudice in order to disclaim coverage for breaches of notice or consent-to-settlement provisions. *Id.* at 122–23, 571 N.E.2d 357 (citing *Johnson Controls*, 381 Mass. at 282, 409 N.E.2d 185; *MacInnis*, 403 Mass. at 223, 526 N.E.2d 1255). Instead, the court found that, by entering into a consent judgment with the Commonwealth, the plaintiff had, in fact, frustrated the fundamental purpose of the consent-to-settlement clause. *Id.* at 123, 526 N.E.2d 1255.

[T]he purpose of the policy provision in question is to give the insurer an opportunity to protect its interests.... [T]he record clearly establishes that Augat's breach

of the voluntary payment provision undermined that purpose.

*Id.*

To repeat, under Massachusetts law, American Alliance is required to show material prejudice to its position in order to be relieved of liability under the insurance contract as a result of plaintiff's breach of the policy's notice and voluntary settlement provisions. In fact, American Alliance does not even *claim* any such prejudice to its position in support of its disclaimer of liability under the policy. Obviously, defendant has therefore not sustained its burden under the applicable caselaw.

Further, even when viewing the facts in the light most favorable to the defendant, no such prejudice could be claimed by American Alliance. American Alliance does not dispute the fact that Union suffered damages as a result of the defective New England film, nor does it claim that New England's policy would deny coverage for such a claim. New England's settlement of Union's well-documented and authentic claim, therefore, did not materially prejudice American Alliance's position or frustrate the fundamental purposes of either the notice or voluntary payment provisions of the policy.[1]

Since American Alliance has neither claimed nor demonstrated any material prejudice to its interests resulting from either the timing of New England's notice or its settlement agreement with Union, it has not sustained its burden of showing that New England's actions in either of those circumstances frustrated the underlying purpose behind the provisions and therefore resulted in material prejudiced to its position. American Alliance's disclaimer of liability under the policy issued by it to New England is therefore improper as a matter of law and its *motion for summary judgment must be denied.*

### V. *CONCLUSION*

For the forgoing reasons, the court hereby ALLOWS plaintiff's motion for summary judgment on Count I and DENIES defendant's motion for summary judgment on Counts I and II. A separate order will issue.

---

1. In addition, it would have been grossly unfair to plaintiff to require it to delay resolution of the claim and jeopardize its relationship with an important customer to satisfy a technicality in the policy with no risk of prejudice to the insurer.