**PACIFIC INSURANCE COMPANY LIMITED, Plaintiff,**

v.

**EATON VANCE MANAGEMENT, Defendant.**

**No. CIV.A. 00–11128–JLT.**

United States District Court, D. Massachusetts.

Aug. 14, 2002.

Harvey Weiner, Peabody & Arnold LLP, Boston, MA, for Pacific Ins. Co., Ltd., Plaintiff.

Jeffrey B. Maletta, Kirkpatrick & Lockhart, Washington, DC, D. Lloyd Macdonald, Kirkpatrick & Lockhart, Boston, MA, for Eaton Vance Management, Defendant.

## *MEMORANDUM*

TAURO, District Judge.

### *INTRODUCTION*

The Plaintiff, Pacific Insurance Company, Limited ("Pacific") filed this action for declaratory relief requesting a determination that Pacific's Mutual Fund Errors and Omissions Policy ("Policy") does not cover a coverage claim made by the Defendant, Eaton Vance Management ("Eaton Vance"), arising from its failure to fund a particular profit sharing plan ("Plan"). That plan involved accounts of employees of Eaton Vance's commonly controlled organizations (Counts I and II). Further, Pacific asks that even if the court finds that the Policy covers Eaton Vance's claim, that the court also find that Pacific may deny coverage because it was prejudiced by Eaton Vance's settlement of the underlying claim without Pacific's consent and by Eaton Vance's failure to promptly noti-

fy Pacific of the claim (Counts III and IV). Finally, Pacific asks that if this court finds that the Policy covers the claim and that Pacific was not prejudiced, that the court determine that the deductible provision of the Policy imposes a $1000 deductible per employee account, rather than just one deductible for the single coverage claim made by Eaton Vance against Pacific(Count V).

At issue are the parties' cross motions for Summary Judgment.

## BACKGROUND

Eaton Vance and its predecessors have operated the Plan as a qualified profit sharing plan since the 1950s.[1] The Plan has been restated and amended on several occasions since its inception.[2]

In July 1986, Eaton Vance adopted new Plan Documents, effective November 1, 1984 ("1984 Plan Documents").[3] Eaton Vance did not intend to change the scope of the Plan. But, the language of the Plan Documents changed such that all employees allegedly became eligible to participate in the Plan unless specifically excluded.[4] Additionally, the definition of "employer" changed to include Eaton Vance and all of its "commonly controlled organizations."[5] Prior to the 1984 Plan Documents, employees of commonly controlled organizations were not included in the Plan unless the organization intentionally adopted the Plan in writing.[6]

Eaton Vance was unaware of the change in the language of the Plan and did not recognize employees of commonly controlled organizations as Plan participants, did not establish accounts in their names, did not provide them with information regarding the Plan, did not exclude them from the Plan, nor did it inform those employees that they were eligible for Plan benefits.[7] Further, the commonly controlled organizations' employee handbooks did not mention the Plan.[8]

On February 2, 1999, Wilfredo Hernandez ("Hernandez"), an employee of Compass Management, Inc. ("Compass"), a commonly controlled organization, sent a letter to Eaton Vance, by way of his attorney, indicating that money due to him under the Plan had not been deposited into his retirement account.[9] Upon receipt of Hernandez's letter, Eaton Vance consulted its outside ERISA counsel, Bingham Dana, LLP, who evaluated Hernandez's claim.[10] Although Eaton Vance never intended to fund the retirement accounts of employees of wholly owned subsidiaries, Bingham Dana determined that, due to the change in the wording of the Plan Documents, the Hernandez claim had merit.[11] Bingham Dana advised Eaton Vance that it would

1. Declarations of Daniel J. Ethier and Mark Burkhard Submitted in Support of Motion of Eaton Vance Management for Summary Judgment, Tab 1, Ethier Decl. ("Ethier Decl.") ¶3: Declarations of Daniel J. Ethier and Mark Burkhard Submitted in Support of Motion of Eaton Vance Management for Summary Judgment, Tab 2, Burkhard Decl. ("Burkhard Decl.") ¶3.

2. Burkhard Decl. ¶3.

3. *Id.* at ¶6

4. *Id.* at ¶7, Ex. C, Sec. 3.4.

5. *Id.* at ¶7, Ex. C, Sec. 2.7, 3.5.

6. *Id.* at ¶4, Ex. A, Sec. R5–1, R1–1, R1–2.

7. Eaton App., Tab 1, Rowland Dep. at 44–46; Burkhard Decl. ¶7–10; Ethier Decl. ¶12.

8. Pacific App., Tab 1, Burkhard Dep. ("Burkhard Dep."), at 66–67.

9. Compl. ¶6; Burkhard Decl. ¶11, Ex. E.

10. Burkhard Decl. ¶12.

11. *Id.* at ¶13.

be unsuccessful if Hernandez's claim were litigated, due to the plain language of the Plan Documents.[12] Additionally, Bingham Dana advised Eaton Vance that Eaton Vance, the Plan, and the Plan participants would face serious tax consequences if the IRS discovered that the Plan was not administered according to its terms. The IRS has the authority to disqualify plans that are not properly administered.[13]

On April 28, 1999, Bingham Dana sent a letter to Hernandez's attorney acknowledging that Eaton Vance should have recognized Hernandez and other "similarly situated employees" as Plan participants and stated that Eaton Vance would fund those accounts at the level they would have been had the employees been recognized as Plan participants all along.[14] Eaton Vance identified all eligible employees and established accounts for employees who were previously left out of the Plan.[15]

Eaton Vance notified Pacific of Hernandez's claim and the efforts made to remedy the situation on June 18, 1999, four months after Hernandez's claim was made and nearly six weeks after Eaton Vance admitted liability to Hernandez.[16] Eaton Vance provided Pacific with requested documents and information from June 1999 to May 2000.[17]

Acting on the advice of Bingham Dana, Eaton Vance decided that the IRS' Voluntary Compliance Review ("VCR") filing was the most appropriate manner in which to avoid potential tax penalties and/or disqualification of the Plan. On December 23, 1999, Eaton Vance asked Pacific to agree to a VCR filing with the IRS.[18] Pacific suggested that Eaton Vance not make any further contributions to the Plan, but base the VCR proposal on the reallocation of money already in the Plan and further advised Eaton Vance to take whatever action it deemed necessary.[19]

Both Pacific and Eaton Vance investigated other possible remedial measures to deal with the Hernandez claim, but neither party came up with an agreeable alternative.[20] Ultimately, Pacific withheld consent to the VCR filing, stating that it was in no position to give consent since it was denying coverage of the claim.[21] Pacific's Complaint was Eaton Vance's first written notice that Pacific was denying the claim.[22]

The insuring clause, Section CC–1 of Endorsement # 1, of Eaton Vance's insurance Policy provides coverage for:

Loss or liability incurred by the Insured, from any claim made against the Insured during the Endorsement Period, by reason of any actual or alleged failure to discharge his or its duties or to act prudently within the meaning of the Employee Retirement Income Security Act of 1974 ["ERISA"] or any amendments thereto or successor law or any

12. Eaton App. Tab 3, Isaia Dep. ("Isaia Dep.") at 127–8, 144–6.

13. Isaia Dep. at 13–15, 29–31; Burkhard Decl. ¶ 14, Ex. F.

14. Burkhard Decl. ¶ 15, 16, Ex. G.

15. Ethier Decl. ¶ 10, 14, 16.

16. Eaton App., Tab 2, Benfield Dep. ("Benfield Dep.") at 22–24.

17. *Id.* at 97–98.

18. Eaton App., Tab 8; Isaia Dep. at 45–47.

19. Benfield Dep. at 111–112; Eaton App., Tab 9.

20. Eaton App., Tab 9; Eaton App., Tab 10; Benfield Dep. at 117, 146; Isaia Dep. at 60–64.

21. Benfield Dep. at 195–197; Eaton App., Tab 14.

22. Eaton App., Tab 11; Benfield Dep. at 179.

rule or regulation, or by reason of any actual or alleged breach of fiduciary responsibility within the meaning of said Act or any amendments thereto or successor law or any rule or regulation in the Insured's capacity as a fiduciary with respect to any pension or employee plan or trust.[23]

Pacific points to the Settlement Provision of the Policy which states in part that, "The Insureds shall not admit liability for or settle any claim in excess of the deductible or incur any costs or expenses in connection therewith without the written consent of the Company, which consent shall not be unreasonably withheld."[24] Additionally, Pacific points to the Notice Provision of the Policy which states that, "The Insured or their representative shall, as a condition precedent to any right to coverage under this Insurance, give to the Company notice in writing, as soon as practicable, during the Endorsement Period, (a) of any claim made against them; (b) of any circumstances which may subsequently give rise to a claim for which coverage is provided hereunder...."[25]

Throughout this period, Eaton Vance had the discretionary authority to construe the terms of the Plan.[26] Section 21.1 of the Plan reads: "The principal employer has discretionary authority to determine the eligibility for benefits and to construe the terms of the Plan."[27]

## DISCUSSION

Both Eaton Vance and Pacific moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[28] In order for the court to grant summary judgment in favor of one party, the court must examine the opposing party's case in its most favorable light.[29]

## A. Breach of Fiduciary Duty Under ERISA (Count I)

■ Whether Eaton Vance had a fiduciary duty and whether Eaton Vance breached that duty are threshold issues in this case. If Eaton Vance's failure to recognize Hernandez and other similarly situated employees as Plan participants constitutes a breach of fiduciary duty under ERISA, that breach should be covered by the Policy.[30] The purpose of fiduciary duties under ERISA is based on the common law of trusts and exists to ensure the "equitable character" of employee retirement plans.[31] ERISA defines "fiduciary

---

23. Eaton App., Tab 4, Sec. CC–1.

24. Eaton App., Tab 4, Section C–1.

25. Eaton App., Tab 4, Section C–4.

26. Pacific App., Tab 6, Sec. 21.1.

27. Pacific App., Tab 6, Sec. 21.1.

28. Fed.R.Civ.P. 56(c).

29. *See Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997).

30. The Policy provides for coverage for "loss or liability" incurred by Eaton Vance as a

result of a "failure to discharge his or its duties or to act prudently within the meaning of [ERISA]..." or as a result of "any actual or alleged breach of fiduciary responsibility within the meaning of [ERISA]... or any rule or regulation in the Insured's capacity as a fiduciary with respect to any pension or employee benefit plan or trust." Section CC–1 of Endorsement # 1 of Policy.

31. *See Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).

duty" as a prudent man standard of care, where the fiduciary must act solely in the interests of participants, "for the exclusive purpose of providing benefits to participants ... in accordance with the documents and instruments governing the plan ...."[32] Eaton Vance had a fiduciary duty under ERISA to *administer* the Plan in accordance with its terms. But, it had no fiduciary duty in the determination of the form or structure of the plan benefits, including the decision as to who is entitled to receive benefits.[33] Pursuant to ERISA, Eaton Vance had a fiduciary duty to disclose information regarding the Plan to all participants.[34]

Eaton Vance asserts that its failure to identify and fund the accounts of Hernandez and others is a failure to act prudently in "providing benefits to participants... in accordance with the documents and instruments governing the plan...."[35] Eaton Vance asserts that it *set* the terms of the Plan when it adopted the 1984 Plan Documents and that it subsequently breached its duties under ERISA when it failed to *administer* the Plan in accordance with its terms by establishing and funding retirement accounts for employees like Hernandez.

Pacific counters that the Policy does not cover Eaton Vance's claim because Eaton Vance did not breach a fiduciary duty under ERISA. Pacific asserts that Hernandez was not recognized as a Plan participant because Eaton Vance *set* the terms of the Plan so as not to include employees such as Hernandez. Eaton Vance did not have a fiduciary duty under ERISA to provide all of its employees with retirement benefits.[36] Pacific relies on *Hughes* and *Averhart* to assert that employers have no fiduciary duty in the design or setup of the retirement Plan, including the decision of who is entitled to receive benefits and in what amount.[37]

*Central States v. Central Transport* is instructive on the issue of fiduciary duty.[38] There, the plan was established, as part of a collective bargaining agreement, for the benefit of union employees who worked for thousands of different employers.[39] The plan, entitled Central States, sued Central Transport, an employer, when Central Transport refused to allow an audit to ensure that all employees were properly identified and receiving the proper contributions to their retirement accounts.[40] The Court stated that, "ERISA clearly assumes that ... trustees will take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms."[41] Further, the Court ex-

---

**32.** 29 U.S.C. § 1104(a).

**33.** *See Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 443–444, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) (ERISA fiduciary duty was not implicated when employer changed the structure of the retirement plan); *Averhart v. US WEST Management Pension Plan,* 46 F.3d 1480, 1488 (10th Cir.1994) (an employer has two different tasks, one of *administering* the terms of the plan and one of *setting* the terms of the plan).

**34.** *See* 29 U.S.C. § 1021(a); 29 U.S.C. § 1022; 29 U.S.C. § 1024(b); 29 U.S.C. § 1104(a)(1)(D)

**35.** 29 U.S.C. § 1104(a).

**36.** *See Hughes Aircraft,* 525 U.S. at 444, 119 S.Ct. 755.

**37.** *See id.; Averhart,* 46 F.3d at 1488.

**38.** *See Central States,* 472 U.S. at 571, 572, 105 S.Ct. 2833.

**39.** *Id.* at 559, 105 S.Ct. 2833.

**40.** *Id.*

**41.** *Id.* at 571, 572, 105 S.Ct. 2833.

plained that ERISA's minimum reporting and disclosure standards require plans to provide all participants with information regarding their rights and obligations under the plan, "a task that would certainly include the duty of determining who is in fact a participant."[42]

■ Guided by *Central States*, this court agrees with Eaton Vance that it had a fiduciary obligation under ERISA to provide all Plan participants with information concerning their rights and obligations under the Plan. *Central States* clearly interpreted this provision of ERISA to include identifying the Plan participants.[43] When it failed to recognize Hernandez and others as Plan participants, and failed to establish and fund retirement accounts for those employees in accordance with the terms of the Plan documents, Eaton Vance breached its fiduciary duty under ERISA. The Policy, therefore, covers the liabilities stemming from Eaton Vance's failure to identify Hernandez and others as Plan participants. Accordingly, Eaton Vance's motion for summary judgment is ALLOWED as to Count I.[44]

## B. The Cause of Eaton Vance's Liabilities (Count II)

■ The Policy only provides coverage for liabilities caused by a breach of an ERISA fiduciary duty. The Parties disagree as to whether Eaton Vance's liability to Hernandez and others is due *"by reason of* any actual or alleged failure to discharge his or its duties or to act prudently within the meaning of" ERISA or *"by reason of* any actual or alleged breach of fiduciary responsibility within the meaning of said Act . . . ."[45] The causation question, therefore, is whether Hernandez's account was empty because Eaton Vance breached its fiduciary duty to administer the Plan according to its terms or whether Hernandez's account was empty because Eaton Vance intentionally did not fund it.

Pacific argues that, as Eaton Vance is charged with full knowledge of the terms of the Plan, the only explanation for Hernandez's unfunded account is that Eaton Vance intentionally did not fund the retirement accounts and could not reasonably expect Pacific to take responsibility for its outstanding benefits.

Eaton Vance asserts that simply signing the 1984 Plan Documents did not proximately cause Hernandez' account to be unfunded. Rather, the cause of Hernandez's unfunded account was that Eaton Vance did not administer the Plan in accordance with its terms, which is a breach

---

**42.** *Id.*

**43.** *See Central States,* 472 U.S. at 571, 572, 105 S.Ct. 2833; 29 U.S.C. § 1021; 29 U.S.C. § 1022; 29 U.S.C. § 1024(b); 29 U.S.C. § 1104(a)(1)(D).

**44.** In another attempt to deny coverage, Pacific argues that the Policy does not cover Eaton Vance's claim because no third party made an allegation of breach of fiduciary duty against Eaton Vance and Eaton Vance, as the insured, may not assert a breach of fiduciary duty against itself in an attempt to collect under the Policy. The Policy provides protection "from any claim made against the Insured." Even though Hernandez's letter did

not assert a breach of fiduciary duty under ERISA, however, it is clear that the letter was a "claim" against Eaton Vance. The policy defines a claim as, among other things, "any demand received by an Insured for money or damages. . . ." Eaton App., Tab 4, Endorsement 15. The court notes that this finding is consistent with its Memorandum in *Robinson v. Federal Ins. Co.* 01–cv–11484–JLT (D.Mass. July 19, 2002). In that case, the Parties disagreed as to the definition of "claim" when the policy failed to define the term. This court held, on specific facts, that the term "claim" was ambiguous.

**45.** Eaton App., Tab 4, Sec. CC–1 (emphasis added).

of fiduciary duty under ERISA that is covered by the Policy. This court agrees with Eaton Vance. The summary judgment record indicates that Eaton Vance's failure to read the 1984 Plan Documents closely enough to see that the scope of the Plan had changed was a failure to use a prudent man standard of care to administer the terms of the Plan in the participants' best interests. In other words, Eaton Vance's actions amount to a breach of fiduciary duty which resulted in Hernandez's account not being funded. This court, therefore, ALLOWS Eaton Vance's motion for Summary Judgment as to Count II.

## C. Prejudice Caused by Eaton Vance's Settlement and Late Notice (Counts III and IV)

 Counts III and IV of Pacific's complaint ask the court to determine that Pacific was prejudiced by Eaton Vance's actions with respect to the Hernandez claim. Pacific argues that Eaton Vance violated both the settlement provision of the Policy and the notice provision. Eaton Vance counters that Pacific was not prejudiced by its behavior. As Judge Ponsor noted in a factually similar case:

> It is well settled under Massachusetts law that an insurer attempting to be relieved of its obligations under a liability policy on the ground of untimely notice or violation of a voluntary payment provision must prove that the breach resulted in actual prejudice to its position. . . . In other words, in order to deny coverage to an insured on the grounds

that it has breached the voluntary payment and notice provisions of its policy, an insurer must show that the insured's breach seriously impaired the insurance company's investigation or defense of the action, thereby prejudicing its interest in avoiding payment on claims that it cannot then adequately defend.[46]

Consequently, in order to prevail, Pacific must show that it was actually prejudiced by Eaton Vance's supposed late notice or breach of the settlement provision. The viability of possible defenses to Hernandez's claim, the length of delay in Eaton Vance's notice, Pacific's participation in the defense and investigation of Hernandez's claim for over a year, and the possible IRS penalties are all issues to be considered here.

A finding of prejudice is appropriate where the insurer could have reasonably withheld consent to settlement if given the opportunity.[47] The likelihood of success in the defense of the claim is a factor to be considered in the determination of prejudice.[48] Furthermore, the insurer must have actually been prejudiced.[49] The mere possibility of prejudice is insufficient.[50]

Eaton Vance asserts that Pacific was not prejudiced because it was able to investigate the claim, review relevant documents, comment on the draft VCR, and pursue other means of addressing Hernandez's claim. Furthermore, Eaton Vance argues that Pacific was not prejudiced because it had no right to control the defense of the claim, noting that Section C–1 of the Policy provides that "It shall be the duty of the Insureds, and not the Company, to defend

---

46. *See New England Extrusion, Inc. v. American Alliance Ins. Co.,* 874 F.Supp. 467, 470 (D.Mass.1995).

47. *See Edith MacInnis v. Aetna Life & Casualty Co.,* 403 Mass. 220, 226, 526 N.E.2d 1255 (1988).

48. *See id* at 229 n. 16, 526 N.E.2d 1255.

49. *See Employer's Liability Assurance Corp. Ltd., et al v. Hoechst Celanese Corp.,* 43 Mass. App.Ct. 465, 476, 478, 684 N.E.2d 600 (1997).

50. *See id.*

claims ... The Company may, at its own expense, but is not obligated to, associate with any Insured in the investigation, defense or settlement of any claim ...."[51] In accordance with that provision, Eaton Vance provided Pacific with all requested documents and information from June 1999 through May 2000. Finally, Eaton Vance argues that Pacific suffered no prejudice because its central argument, that the Policy does not provide coverage, was unaffected by Eaton Vance's premature settlement or late notice.

The record here indicates that Eaton Vance decided to fund the accounts of Hernandez and others when, upon the advice of Bingham Dana, it determined that any defense against Hernandez's claim would have been unsuccessful if litigated. More importantly, Eaton Vance determined that it was in the best interests of Eaton Vance, the Plan, and Plan participants to rectify the situation with Hernandez and others before the IRS could audit the Plan and penalize or disqualify it. The IRS has the authority to revoke a Plan's tax-qualified status if the Plan is not operated in accordance with its terms.[52] Essentially, this means that Eaton Vance, the Plan, and all Plan participants would have to pay taxes on all contributions that were made to the Plan for all of the years the Plan was in operation.[53] Eaton Vance points to several sources in the record to show that the danger of disqualification of the Plan was real and that it had to act quickly.[54] Even though Pacific apparently viewed disqualification as unlikely, it admitted that Eaton Vance's concern regarding the disqualification of the Plan was legitimate.[55] This court, therefore, agrees with Eaton Vance that the threat of IRS penalties left Eaton Vance with no other choice but to act quickly.

In addition, Pacific argues that it was prejudiced because it was unable to pursue the defense that the Plan could have been construed so as not to include Hernandez. Pacific maintains that the Plan was ambiguous because Section 25 provides that "a commonly controlled organization may join the principal employer in adopting this plan. A commonly controlled organization with any employees eligible to be participants must join the principal employer in adopting this plan. No other organization may do so."[56] Section 25–4 further provides that a commonly controlled organization may join by a written resolution.[57] The language of the "Participation" and "Definitions" sections of the Plan, however, appears to include all employees of commonly controlled organizations.[58] Because all terms and provisions in an ERISA regulated plan must be given meaning, Section 25–4 cannot be ignored, even in light of the "Participation" and "Definitions" sections.[59] Pacific argues that Eaton

---

**51.** Eaton App., Tab 4, Sec. C–1.

**52.** Burkhard Decl., Ex. F.

**53.** Burkhard Decl., Ex. F.

**54.** Isaia Dep. at 127–28, 144–46; Burkhard Decl. ¶ 13, Ex. F.

**55.** Eaton App., Tab 2, Benfield Dep. at 171–72.

**56.** Eaton App., Tab 4.

**57.** *Id.*

**58.** Section 3.3: "An employee ordinarily becomes an active participant on his entry date." Section 3.5 defines employee as "any common-law employee of the employer, any self-employed individual, and any individual to be an employee of the employer under the provisions of Section 3.11." Section 2.7 defines employer as the "employer named in the last section of the adoption agreement, any commonly controlled organization....."

**59.** *See Rodriguez–Abreu v. Chase Manhattan Bank, NA,* 986 F.2d 580, 586 (1st Cir.1993); *Harper v. R.H. Macy & Co.,* 920 F.2d 544, 545 (8th Cir.1990).

Vance had the discretionary authority to interpret this ambiguity and to construe the terms of the Plan so as not to include Hernandez.[60]

Determining whether the Plan language is ambiguous is a question of law, and the court may look to extrinsic evidence to determine the parties' intent.[61] Pacific argues that since Section 25 is inconsistent with the "Participation" and "Definitions" sections of the Plan, the court should look to Eaton Vance's undisputed intent not to include Compass employees in order to find that Hernandez, as a matter of law, was not covered by the Plan.

Eaton Vance counters that there was no ambiguity in the Plan and the sections of the Plan entitled "Participation" and "Definitions" are straightforward: "Employer" includes Eaton Vance and commonly controlled organizations and "employees" can participate unless specifically excluded.[62] Eaton Vance further asserts that Section 25 of the Plan does not contradict any terms of the "Participation" or "Definitions" sections. Additionally, Section 25 states that "A commonly controlled organization with employees eligible to be participants *must* join the plan." [63]

The relevant question for the court is whether the alleged ambiguity in the Plan was a sufficient reason for Pacific to withhold consent to settle Hernandez's claim.[64] This court finds that the terms of the Plan were not ambiguous and that it would not have been reasonable for Pacific to with-

hold consent on that basis. In addition, in light of the possible IRS penalties and Pacific's participation in the investigation and solution of the problem, this court agrees with Eaton Vance that Pacific was not denied the opportunity to defend its interests in avoiding paying the claim.

Pacific also maintains that the language in the 1984 Plan Documents that included employees of commonly controlled subsidiaries was nothing more than a scrivener's error and, therefore, the court should look to parol evidence and allow the parties' actual intent to determine whether Hernandez was included in the Plan. A scrivener's error doctrine may be appropriate, Pacific argues, because Hernandez did not reasonably expect to get benefits. Eaton Vance never provided him with any information regarding the Plan and ERISA's goal is "ensuring that employees will not be left empty handed once employers have guaranteed them certain benefits." [65]

Nonetheless, Pacific could not have reasonably withheld consent to settlement based on the doctrine of scrivener's error because, by its own argument, Eaton Vance is charged with full knowledge of its Plan documents and it "knew" that Hernandez was a Plan participant. As discussed above, Eaton Vance did not administer the Plan properly, which was a breach of fiduciary duty under ERISA. The scrivener's error doctrine, therefore, is unavailing.

**60.** Section 21.1 of the Plan reads, "The principal employer has the discretionary authority to determine eligibility for benefits and to construe the terms of the plan."

**61.** *Rodriguez–Abreu.*, 986 F.2d at 586.

**62.** Burkhard Decl., Ex. C, Sec. 2.7, 3.5.

**63.** *Id* (emphasis added).

**64.** *See MacInnis*, 403 Mass. at 226, 526 N.E.2d 1255.

**65.** *Hughes Aircraft*, 525 U.S. at 446, 119 S.Ct. 755; *Central States*, 472 U.S. at 569, 105 S.Ct. 2833; *International Union of Electronic, Electric, Salaried, Machine and Furniture Workers, AFL–CIO v. Murata Erie North America, Inc.*, 980 F.2d 889, 907 (3d Cir.1992).

Additionally, Pacific argues that by the time it was notified of Hernandez's claim, all that was left for Pacific to do was to write a check. According to *Augat* [66], this means that no showing of prejudice is required.[67] Pacific's argument is not convincing, however, because Pacific worked with Eaton Vance for more than a year to find an agreeable solution.[68] Pacific was able to do more than just write a check.

■■■ Pacific also argues that it was prejudiced because it was not able to assert a statute of limitations defense to Hernandez's claim. Pursuant to 29 U.S.C. § 1113, actions for breach of fiduciary duty must be filed within six years after the last act constituting the breach, or three years after the plaintiff knew or should have known of the breach. In the case of an omission, the statute of limitations starts to run on "the latest date on which the fiduciary could have cured the breach or violation." [69] Pacific argues that the statute of limitations started to run at the time the 1984 Plan Documents were adopted, which was in 1986.[70] Eaton Vance correctly asserts, however, that the act was an omission-the failure to identify participants and fund accounts-that the statute of limitations has not run because Eaton Vance still has the opportunity to correct the mistake.

Finally, Pacific argues that it was prejudiced because it was precluded from asserting the defense that only one third party has made a "claim" against the Insured under Endorsement No. 15 of the Policy, therefore Pacific will only pay for one person, Hernandez, and not pay for others similarly situated. This argument fails, however, because Eaton Vance had to rectify the entire situation to avoid IRS penalties.

Accordingly, Eaton Vance's motion for Summary Judgment is ALLOWED as to Counts III and IV.

### D. Deductible (Count V)

■■■ The deductible provision to Endorsement # 1 provides: "With respect to Insuring Agreement CC, the Insured shall bear the first $1000 of loss incurred from each and every claim incurred including costs and expenses incurred in the investigation or defense of every claim." Eaton Vance argues that only one deductible should apply because all liability arose out of a single set of circumstances. Pacific, on the other hand, argues that the Policy deductible applies to each new employee account established and funded.[71] The term "claim" is defined by the Policy as "any demand received by an Insured for money or damages ...." [72] Because Eaton Vance addressed the situation as if all

---

66. *Augat, Inc. v. Liberty Mutual Ins. Co.*, 410 Mass. 117, 571 N.E.2d 357 (1991).

67. *See id.* at 123, 571 N.E.2d 357.

68. Eaton App., Tab 2, Benfield Dep. at 97–98; Eaton App., Tab 8; Eaton App., Tab 3, Isaia Dep. at 45–47.

69. 29 U.S.C. § 1113.

70. Pacific Mem. in Supp. of Cross Mot. for Summ. J. [# 36] at 15–17.

71. Pacific points to the language that the deductible applies to "each and every claim incurred" and relies on *Atlas Underwriters* in

defining "claim" as the "assertion of a legal right by a third person for damages caused by the conduct of the named Insured." *Atlas Underwriters, Ltd. v. Meredith–Burda, Inc.*, 231 Va. 255, 258, 343 S.E.2d 65, 67 (1986) ($250 deductible applied to each claim made by each owner of a cars damaged by Insured in a single instance). See also *Capitol Indemnity Corporation v. Miles*, 978 F.2d 437, 438, 439 (8th Cir.1992) ($500 deductible per claim applied to cars damaged by the Insured).

72. Eaton App., Tab 4, Endorsement # 15.

individuals situated similarly to Hernandez had made claims, this court agrees with Pacific. To apply only one deductible would be contrary to the language of the policy. Pacific's motion for Summary Judgment as to Count V, therefore, is ALLOWED.

### CONCLUSION

For the reasons stated above, Eaton Vance's motion for Summary Judgment is ALLOWED as to Counts I, II, III, and IV and Pacific's motion for Summary Judgement is ALLOWED as to Count V. Eaton Vance is requested to file briefs and affidavits regarding damages by September 9, 2002. Pacific shall respond by September 23, 2002.

AN ORDER WILL ISSUE