Johnson Controls, Inc. *vs.* John T. Bowes & another.[1]

Middlesex.  April 9, 1980. — August 5, 1980.

Present: Hennessey, C.J., Quirico, Wilkins, & Abrams, JJ.

*Notice.  Insurance,* Notice.  *Practice, Civil,* Retroactive effect of judicial decision.

An insurance company attempting to be relieved of its obligations under a liability insurance policy not covered by G. L. c. 175, § 112, on the ground of untimely notice will be required, as to claims arising after the date of this opinion, to prove both that the notice provision was in fact breached and that the breach resulted in prejudice to its position. [280-283]

Civil action commenced in the Superior Court on November 12, 1976.

The case was heard by *Ronan,* J., on motion for summary judgment.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Evan T. Lawson (Howard J. Wayne* with him) for the plaintiff.

*Stephen A. Moore (Jean F. Farrington* with him) for the St. Paul Fire and Marine Insurance Company.

Hennessey, C.J.  This is an action by Johnson Controls, Inc. (Johnson), to reach and apply the proceeds of legal malpractice insurance policies issued by St. Paul Fire and Marine Insurance Company (St. Paul) to attorney John T. Bowes (Bowes).  See G. L. c. 214, § 3 (6).  A judge of the Superior Court in Middlesex County granted St. Paul's motion for summary judgment and entered a judgment dis-

---

[1] St. Paul Fire and Marine Insurance Company.

missing Johnson's claim. The appeal was transferred to this court on our own motion.

Between 1960 and 1972 Bowes, then a member of the Massachusetts bar, was retained by Johnson to perform legal services in its behalf. St. Paul issued Bowes legal malpractice insurance policies, which were in effect from July, 1962, to July, 1968, and had a $1,000,000 an occurrence limit of liability.

On June 4, 1973, Johnson brought an action against Bowes in the Superior Court in Norfolk County charging six counts of negligence in his performance of legal services. On January 10, 1974, counsel for Johnson notified St. Paul of the malpractice action against Bowes. Counsel also provided St. Paul with copies of the declaration and writ and rescheduled a deposition of Bowes from January 30 to February 13, 1974, at the request of St. Paul's representative. On February 7, 1974, St. Paul notified Bowes that it disclaimed coverage and would not honor the claim or provide a defense. St. Paul based its disclaimer on Bowes's failures to give written notification of the claim and to forward suit papers to the company in violation of the provisions of his insurance contract.[2] A copy of St. Paul's letter to Bowes was sent to attorneys for Johnson.

Subsequently, Johnson's action in Norfolk County against Bowes was referred to a master, who found that Bowes had been negligent in all six instances claimed by Johnson. The master's report was confirmed, and Johnson was awarded judgment against Bowes in the amount of $31,698.28 plus $27.50 for costs. The judgment has not been satisfied.

---

[2] The insurance contract between Bowes and St. Paul provided, in part: (1) "In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place or circumstances thereof, and the names and address [sic] of the injured and of available witnesses shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable." (2) "If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

Johnson raises several issues in this appeal, but we reach only the first wherein Johnson urges this court to reexamine the present rule, applicable to some liability insurance, that the failure of an insured to comply with the notice requirements of a policy, in the absence of estoppel or waiver and regardless of lack of prejudice to the insurer, bars recovery. See *Spooner v. General Accident Fire & Life Assurance Corp.*, 379 Mass. 377, 378 (1979), and cases cited. In *Spooner v. General Accident Fire & Life Assurance Corp.*, *supra* at 379, we noted that the notice requirement was "an aspect of contract law that we [had] not previously questioned." In sharp contrast to the case at bar, however, *Spooner* involved a motor vehicle liability insurance policy, one of the types of policies affected by a prospective legislative amendment of the notice requirement.[3] *Id.* at 379-380. This court deferred to the Legislature's determination that the change in common law should be prospective only and refused the plaintiff's request that we "depart retroactively from the meaning and import that we have given for at least two generations to a significant condition of contracts of insurance." *Id.* The policy in the instant case does not come within the confines of the legislative amendment. Consequently, it presents a more appropriate vehicle for reconsideration of our common law.

Although a majority of courts adhere to a strict contractual interpretation of notice provisions as a condition precedent to an insurer's liability, there is a recent trend to eschew such technical forfeitures of insurance coverage unless the insurer has been materially prejudiced by virtue of late notification. See generally 8 J.A. Appleman, Insurance Law and Practice § 4732 (1962); 13 G. Couch, Insurance § 49:88 (2d ed. 1965); Comment, The Materiality of Prejudice to the Insurer as a Result of the Insured's

---

[3] The Legislature's passage of St. 1977, c. 437, amending G. L. c. 175, § 112, prohibits an insurer from denying coverage on a motor vehicle insurance policy or other policy compensating for bodily injury, death, or property damage because of failure of the insured to give seasonable notice, unless the insurer has been prejudiced thereby.

Failure to Give Timely Notice, 74 Dick. L. Rev. 260 (1970). In rejecting the strict contractual approach, the Supreme Court of Pennsylvania stated: "The rationale underlying the strict contractual approach reflected in our past decisions is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can 'bargain' is the monetary amount of coverage." *Brakeman* v. *Potomac Ins. Co.*, 472 Pa. 66, 72 (1977). Courts have also been influenced to adopt a more liberal approach to the notice question because the classic contractual approach involves a forfeiture. In *Cooper* v. *Government Employees Ins. Co.*, 51 N.J. 86, 93-94 (1968), the court commented: "[A]lthough the policy may speak of the notice provision in terms of 'condition precedent,' . . . nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds." See *Miller* v. *Marcantel*, 221 So. 2d 557, 559 (La. App. 1969); Restatement (Second) of Contracts § 255 (Tent. Draft No. 7, 1972).

The basic purpose of a strict interpretation of a notice clause is to enable an insurer to make "seasonable investigation of the facts relating to liability." *Bayer & Mingolla*

*Constr. Co.* v. *Deschenes,* 348 Mass. 594, 600 (1965). "Such a requirement protects the insurance company from fraudulent claims, as well as invalid claims made in good faith, by allowing the insurance company to gain early control of the proceedings. . . . [A] reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided, e.g., being forced to pay a claim against which it has not had an opportunity to defend effectively. In short, the function of a notice requirement is to protect the insurance company's interests from being prejudiced. Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation." *Brakeman* v. *Potomac Ins. Co., supra* at 74-75. See *Miller* v. *Marcantel, supra* at 559.

In light of the foregoing reasoning, we are of the opinion that our prior decisions relative to the delayed notice of an accident and the delayed notice of the institution of a suit have been too restrictive and should be changed. Accordingly, we hold that where an insurance company attempts to be relieved of its obligations under a liability insurance policy not covered by G. L. c. 175, § 112, on the ground of untimely notice, the insurance company will be required to prove both that the notice provision was in fact breached and that the breach resulted in prejudice to its position. See, e.g., *Lindus* v. *Northern Ins. Co.,* 103 Ariz. 160 (1968); *Miller* v. *Marcantel, supra; Cooper* v. *Government Employees Ins. Co., supra; Fox* v. *National Sav. Ins. Co.,* 424 P.2d 19 (Okla. 1967); *Lusch* v. *Aetna Cas. & Sur. Co.,* 272 Or. 593 (1975); *Pickering* v. *American Employers Ins. Co.,* 109 R.I. 143 (1971); *Factory Mut. Liab. Ins. Co.* v. *Kennedy,* 256 S.C. 376 (1971); *Oregon Auto. Ins. Co.* v. *Salzberg,* 85 Wash. 2d 372 (1975). However, because our reform of the notice requirement constitutes "a drastic or

radical incursion upon existing law," which would disturb retroactively the contractual arrangements of the insurer and the insured, we confine our decision to claims arising after the date of this opinion.[4] *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 167 (1973). R.E. Keeton, Venturing to Do Justice 25-53 (1969). It follows that the Superior Court's order dismissing Johnson's claim is affirmed.

*So ordered.*

---

[4] We note that an alternative to our wholly prospective overruling would be a limited retroactive application to the claim before us. Such selective retroactive application has been justified, in part, because it encourages socially beneficial attacks on outmoded doctrines. E.g., *Molitor* v. *Kaneland Community Unit Dist. No. 302*, 18 Ill. 2d 11, 28 (1959), cert. denied, 362 U.S. 968 (1960) (charitable immunity); *Kojis* v. *Doctors Hosp.*, 12 Wis. 2d 367, 374 (1961) (charitable immunity). However, the unevenness of such a change in doctrine has been criticized: "This combination of partly prospective and partly retroactive overruling offers only a little more encouragement to attacks on outmoded doctrine than the inducement a claimant and his attorney would find in the hope of persuading the court to overrule retroactively. The advantage from this added degree of encouragement, such as it may be, probably is outweighed by the disadvantage of uneven treatment . . . . It is true that some unevenness is an inevitable consequence of any change in doctrine, regardless of the choice among methods of change. But it seems preferable that a court reduce the element of unevenness more than is possible under decisions applying a new rule retroactively only to the case before the court, or to that and closely related cases." R.E. Keeton, Venturing to Do Justice 36 (1969). As we have stated, the change of existing law involves a previously unquestioned aspect of contract law, in which reliance interests exert a strong influence. We conclude, therefore, that a wholly prospective overruling is more appropriate in the instant case. We are cognizant of the fact that in spite of our prospective limitation there will be a period of adjustment in which insurers may be exposed to increased liability, but we do not think such a limited impact justifies a strict adherence to precedent.