LOUIS J. CHESCHI, JR. *vs.* BOSTON EDISON COMPANY;
BECHTEL CONSTRUCTION, INC., third-party defendant.

No. 94-P-737.

Suffolk. May 18, 1995. - August 21, 1995.

Present: WARNER, C.J., IRELAND, & GREENBERG, JJ.

*Agency*, Independent contractor. *Negligence*, Construction work, Violation
of regulation. *Practice, Civil*, Comment by judge. *Indemnity. Notice*,
Timeliness. *Insurance*, Liability insurance. *Contract*, Indemnity.

In a negligence action, the plaintiff did not properly preserve his objection
to the judge's failure to give a requested instruction on liability under
agency principles and, in any event, the judge's instructions accurately
reflected the theory of recovery raised by the evidence, that is, whether
the defendant owner of a construction site retained sufficient control
over the work of an independent contractor to be held liable in negli-
gence for an injury to an employee of the contractor. [135-138]
A plaintiff in a negligence action was not entitled to raise issues on appeal
with respect to which no evidence had been introduced at trial. [138-
139]
The remarks of the judge at a civil trial, though better left unsaid, did not
impede plaintiff's counsel's effectiveness so as to deny the plaintiff a fair
trial, and there was no reversible error in the judge's rulings on the
plaintiff's objection to the tone of defense counsel's cross-examination.
[139]
Where a provision in a construction contract required prompt notification
of negligence claims brought against the property owner as a condition
precedent to the contractor's indemnification of the owner, no prejudice
was required to be shown from late notice given: the owner's failure to
give notice of such a claim until nearly four years after the accident
and two and one-half years after the negligence action was filed re-
lieved the contractor of its obligation to defend and indemnify the
owner. [139-142]

CIVIL ACTION commenced in the Superior Court Depart-
ment on July 9, 1985.

The case was tried before *John J. O'Brien*, J.

*Edward Greer* (*Frank J. Ciano* with him) for the plaintiff.

*Mark E. Cohen* (*Brian C. Duffey* with him) for Bechtel Construction, Inc.

*Thomas D. Burns* for Boston Edison Company.

WARNER, C.J. On May 18, 1984, Louis Cheschi, Jr., an ironworker employed by Bechtel Construction, Inc. (Bechtel), was injured while working on a construction project at the Plymouth Pilgrim I Nuclear Power Plant, owned by Boston Edison Company (Edison). As he walked along a catwalk inside a suppression chamber known as the "torus" section of the nuclear reactor, he tripped on a piece of angle iron and fell a considerable distance. Cheschi filed a negligence action against Edison in the Superior Court on July 9, 1985. Edison filed a third-party complaint against Bechtel[1] on December 28, 1987, seeking indemnification under a provision of their contract for construction services. (Cheschi had filed two workers' compensation claims against Bechtel; Bechtel was never named as a direct defendant.) Cheschi's and Edison's actions were tried together before a jury. Answering special questions, the jury found that Edison was not negligent. They found Bechtel fifty-eight percent negligent, Cheschi forty-two percent contributorily negligent, and Bechtel's and Cheschi's negligence to have proximately caused Cheschi's injuries.

Edison moved for entry of judgment on its claim for indemnification, seeking its legal fees and costs. Following a hearing, the judge ordered Bechtel to pay Edison $82,989.90 in attorneys' fees and costs, plus interest, from July 2, 1985.

Cheschi appeals from the judgment for Edison on his negligence claim, contending that the trial judge improperly refused to give his requested jury instruction on vicarious liability and ruled erroneously on several other matters during the jury trial. Bechtel appeals from the indemnification judgment on the ground that Edison failed promptly to notify Bechtel of Cheschi's claim, as their contract required.

---

[1]Edison also impleaded General Electric Company as a third-party defendant. General Electric was granted summary judgment on November 29, 1988, and is not involved in this appeal.

## Cheschi's appeal.

1. *Jury instructions.* Cheschi requested a jury instruction characterizing Edison and Bechtel as master and servant and imputing Bechtel's negligence to Edison under an agency theory.[2] Instead, the judge characterized Edison's and Bechtel's relationship as that of employer and independent contractor. He instructed that Edison could be held liable for injuries Cheschi incurred in the course of working for Bechtel only if Edison retained control over some part of the work and if it exercised that control negligently. The plaintiff renewed his request following the charge, referring to the instruction by number only. This request was insufficiently explicit to preserve the plaintiff's objection. See *Flood* v. *Southland Corp.*, 416 Mass. 62, 66-67 (1993) ("[A] post-charge objection to the failure to give an instruction, made simply by reference to the number of the requested charge, normally will not satisfy rule 51 unless the judge requests that counsel follow such a procedure and assures counsel that the objection is understood"); Mass.R.Civ.P. 51(b), 365 Mass. 816 (1974). In any event, the judge's instructions accurately reflected the theory of recovery raised by the evidence, as summarized below.

The contract governing Bechtel's construction services, the Maintenance Services Agreement, states explicitly that Bechtel is an independent contractor. It authorizes Bechtel to hire subcontractors, to subcontract services to a particular contractor without Edison's prior approval, and to exercise control over its employees. It requires Bechtel to prepare a manual describing its organization, division of responsibility and administration, and holds Bechtel to performance standards of "recognized professional engineering and construction firms." The agreement provides that Edison will issue

---

[2]The requested instruction reads: "[I]f you find the agent of Boston Edison acted negligently, then under the Doctrine of Respondeat Superior, said negligence is imputed to Boston Edison. That is to say, if Bechtel as the agent of Boston Edison acted in a negligent manner, then said negligence is borne by the master Boston Edison and Boston Edison must be liable."

Bechtel work orders specifying the "scope" of the services, a performance schedule, and the estimated cost, and that Edison will have general oversight and give "overall direction."[3]

A section of the contract entitled "Safety Procedures for Contractors and Subcontractors Working on Boston Edison Facilities" outlines Edison's safety requirements. It specifies that each work project will be subject to Edison's instructions and prior approval concerning safety issues and that uncorrected safety violations could result in Edison's shutting down a contractor's work. Contractors are given responsibility for enforcing the safety requirements.

Uncontroverted trial testimony attested to Bechtel's control of the manner in which it conducted its work. Edison's Construction Management Group, charged with ensuring that work under the contract was completed, did not include Bechtel personnel in its daily informational meetings with Edison personnel. A member of that group could not remember ever overseeing Bechtel's work in the torus.

Testimony was elicited regarding both Bechtel's and Edison's responsibilities for safety procedures. Bechtel had a comprehensive safety program for its work in the torus, produced a safety manual, had safety personnel on site, and held weekly safety meetings. Edison's safety inspector did not inspect the torus area because no Edison people worked there. Radiation safety procedures were under Edison's control. Edison gave seminars on the subject, provided and coordinated the wearing of radiation protective clothing, and monitored the plant's radiation levels.[4]

---

[3]A special provision of the contract designated Bechtel as Edison's agent for the following limited activities: procurement of materials, equipment, and supplies, contract management, quality surveillance, expediting, shop inspection, and traffic services. Cheschi adverts to this provision in his brief. He did not assert at trial that Bechtel's work on the construction project in the torus fell under this provision, however, and he cannot raise this theory for the first time on appeal. See *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976); *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 93 (1984).

[4]During oral argument, Cheschi's attorney suggested that Cheschi's accident may have been caused by the bulky radiation protective outfit that

The evidence showed that Bechtel controlled the details of its construction work, that Edison maintained general oversight to be sure that the work was done, and that both Bechtel and Edison had responsibility for safety procedures. The judge correctly instructed the jury that Bechtel was an independent contractor. See *Corsetti* v. *Stone Co.*, 396 Mass. 1, 5-9 (1985), and cases cited at 9. See also *Khoury* v. *Edison Elec. Illuminating Co.*, 265 Mass. 236, 238-239 (1928); *Chase* v. *Independent Practice Assn.*, 31 Mass. App. Ct. 661, 665 (1991).

He further instructed the jury under the "retained control" theory set forth in the Restatement (Second) of Torts § 414 (1965), and adopted by the Supreme Judicial Court in *Corsetti* v. *Stone Co.*, 396 Mass. at 9-11. See also *McNamara* v. *Massachusetts Port Authy.*, 30 Mass. App. Ct. 716, 718-720 (1991). Section 414 provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."[5]

The facts of this case, like those in *Corsetti* v. *Stone Co.*, 396 Mass. at 5-12, raised a jury question as to whether Edison's involvement in safety procedures resulted in its retaining control over certain aspects of the work and, if so,

---

Edison required him to wear. Nothing in the record or the plaintiff's brief refers to such a theory of liability.

[5]The judge explained Edison's responsibility as follows: "[I]f you find . . . that the defendant, Edison, entrusted work to Bechtel, but Edison retained control of some part of the work, then you may find that . . . Edison owed the plaintiff a duty to exercise reasonable care for his safety and to warn him of dangers of which Edison was aware or, in the exercise of reasonable care, should have known. . . . It is not enough that [Edison] has merely a general right to order the work stopped or resumed, to make suggestions or recommendations which need to necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his method of work or as to operative detail. There must be such retention of a right of supervision that the contractor is not entirely free to do the work in his own way." This instruction tracks the language of comment c of § 414 of the Restatement (Second) of Torts.

whether such control was exercised with reasonable care. Compare *Foley* v. *Rust Intl.*, 901 F.2d 183, 184-185 (1st Cir. 1990), discussing *Corsetti* and related cases. The judge's instructions were correct.

2. *Other issues.* a. Cheschi makes a confused argument that Edison was a general contractor, that this designation is material to Edison's liability for Bechtel's negligence, and that Cheschi was improperly prevented from making this case.[6] He contends that Occupational Safety and Health Administration (OSHA) regulations prohibited Edison, as a general contractor, from shifting certain safety responsibilities to Bechtel. Cheschi, however, did not offer OSHA standards or regulations in evidence to support this theory.[7] See *Roberts* v. *Southwick*, 415 Mass. 465, 468-469 (1993).

In the course of his argument, Cheschi makes a passing reference to the Restatement (Second) of Torts § 424 (1965), which provides: "One who by statute or by administrative regulation is under a duty to provide specified safeguards or precautions for the safety of others is subject to liability to the others for whose protection the duty is imposed for harm caused by the failure of a contractor employed by him to provide such safeguards or precautions."

---

[6]Cheschi states that the judge would not permit him to read in evidence statements contained in Edison's original answer to interrogatories which included, according to Cheschi, Edison's answer that it was a general contractor. Contrary to this representation, the answers Cheschi refers to were read in evidence.

Cheschi also contends that the trial judge erroneously refused to allow him to read in evidence Edison's unverified answer in the pleadings admitting Cheschi's allegation that Edison was a "general contractor." The judge correctly ruled that pleadings may not be used as evidence at trial. See G. L. c. 231, § 87; *Harrington* v. *Metropolitan Transit Authy.*, 345 Mass 371, 373 (1963).

[7]Cheschi's attorney elicited testimony from Edison's safety inspector that he was aware of an OSHA regulation requiring handrails for platforms or walkways from which there was fall exposure over a certain number of feet. He then asked the witness whether Edison, as owner or as general contractor, could delegate safety matters under OSHA regulations. The judge correctly sustained objections to these questions on the grounds that it was inappropriate for this witness to testify about the nature of OSHA regulations, and that the regulations themselves should be presented to the jury. See *Perry* v. *Medeiros*, 369 Mass. 836, 842 (1976).

Section 424 was not raised as a theory of liability at trial, and it cannot be raised for the first time on appeal. See *Trustees of Stigmatine Fathers, Inc.* v. *Secretary of Admn. & Fin.*, 369 Mass. 562, 565 (1976); *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85, 93 (1984). The judge properly instructed the jury that they could consider violations of applicable statutes and codes by the defendant as evidence of negligence. See *Perry* v. *Medeiros*, 369 Mass. at 841, quoting from *Follansbee* v. *Ohse*, 293 Mass. 48, 52 (1935).

b. Cheschi claims that the judge permitted defense counsel to denigrate Cheschi's expert witness and that the judge ridiculed Cheschi's counsel when he objected, thereby denying Cheschi a fair trial. The defense counsel's alleged misconduct occurred while he was cross-examining Cheschi's expert witness. The witness was not answering questions directly. At one point, defense counsel asked "How long have you been an engineer, anyway?" Cheschi's counsel objected to the tone of the question, and the judge responded: "Counsel, I suggest to you that I have been doing this for thirty-five years and I know when something is not right and when something is right. And, [if] I need help from counsel, I will ask for it."

The judge's remark, though better left unsaid, "did not reflect on the merits of [Cheschi's] case, and, taken on its own, the comment hardly served to hold [Cheschi's counsel] up to such scorn and ridicule that his effectiveness as an advocate was impeded." *Shahzade* v. *C.J. Mabardy, Inc.*, 411 Mass. 788, 791-792 (1992). Likewise, there was no reversible error in the judge's rulings on the objections to the cross-examination. See *Commonwealth* v. *Greenberg*, 339 Mass. 557, 580-581 (1959).

We have considered the balance of Cheschi's arguments and find them to be without merit.

### Bechtel's appeal from the indemnity judgment.

A provision of the Maintenance Services Agreement required Bechtel to indemnify Edison for injuries to third parties caused by Bechtel's negligence in the course of its work for Edison, to defend suits brought against Edison for claims

arising out of such negligence, and to pay expenses connected with such suits, provided that Edison gave Bechtel prompt notification of the suit and provided reasonable assistance. Bechtel was first notified of Cheschi's lawsuit two and one-half years after it had been filed, when, on January 4, 1988, Bechtel was served with Edison's third-party complaint.

The trial judge correctly found that Edison had failed to give Bechtel prompt notification, as their indemnification agreement required.[8] See *Depot Cafe Inc. v. Century Indem. Co.*, 321 Mass. 220, 225 (1947); *Peters v. Saulinier*, 351 Mass. 609, 613 (1967); *Royal-Globe Ins. Co. v. Craven*, 411 Mass. 629, 633-634 (1992) (concluding, respectively, that notification given approximately forty-six days, nine months, and four months, after occurrence of accidents was not prompt). He then looked to insurance law, and ruled that Bechtel could not be relieved of its duty to indemnify Edison without proving that it had been prejudiced by the delayed notice. See *Johnson Controls, Inc. v. Bowes*, 381 Mass. 278, 282 (1980), holding that an insurance company must establish that it was prejudiced by untimely notice in order to be relieved of its obligations under a liability insurance policy not covered by G. L. c. 175, § 112.[9] See also *Goodman v. American Cas. Co.*, 419 Mass. 138, 141-142 (1994), extending the *Johnson Controls* ruling to uninsured and underinsured motorist coverage. Since Bechtel had not proved that

---

[8]The indemnity provision contained in the Maintenance Services Agreement, which refers to Edison as "Owner," reads in pertinent part: "Bechtel will indemnify Owner from and against liability to third parties imposed by law upon Owner for injury to or death of persons and for loss of or damage to property, caused by Bechtel's negligence in the performance of Services. Bechtel agrees to defend any claim or suit brought against Owner based upon any such injury, death, loss or damage arising out of such negligence, and shall pay all costs and expenses, including legal fees, in connection with such claim or suit, provided Owner gives Bechtel prompt notice of such claim or suit and provides such reasonable assistance in connection therewith as Bechtel may request."

[9]General Laws c. 175, § 112, as amended by St. 1977, c. 437, prohibits an insurer from denying coverage on a motor vehicle insurance policy or other policy insuring against liability for bodily injury or death or property damage because of the insured's failure to give seasonable notification, unless the insurance company has been prejudiced thereby.

it was prejudiced by the delay, the judge ordered it to indemnify Edison for attorneys' fees and costs.

We agree with Bechtel that the reasons underlying the requirement that certain insurers show prejudice before refusing indemnification for late notice do not apply in this case. In *Johnson Controls*, the court recognized that its imposition of such a burden on insurers treated insurance policies differently from traditional private contracts, and radically changed the law. *Johnson Controls, Inc.* v. *Bowes*, 381 Mass. at 280-283. That ruling was made for two reasons. First, it gives needed protection to the insured, whose insurance contract is not a negotiated agreement but a contract of adhesion whose terms are ordinarily dictated by the insurance company. *Id.* at 280-282. See also *Liberty Mut. Ins. Co.* v. *Gibbs*, 773 F.2d 15, 18 (1st Cir. 1985), emphasizing the importance of "protect[ing] lay policyholders from the hypertechnical application of notice requirements inserted in forms drafted by primary insurance carriers." Second, strict enforcement of notice provisions would result in a forfeiture, "deny[ing] the insured the very thing paid for." *Johnson Controls, supra* at 281. See also *Aetna Cas. & Sur. Co.* v. *Murphy*, 206 Conn. 409, 417 (1988) (strict enforcement of notice provisions "will operate as a forfeiture because the insured will lose his insurance coverage without regard to his dutiful payment of insurance premiums"). The Court of Appeals for the First Circuit saw different circumstances, however, in a case involving a reinsurance contract between two large insurers. The reasons for imposing a prejudice requirement in late notice cases did not apply, the court observed: the "rationale [behind *Johnson Controls* and G. L. c. 175, § 112] would not extend to a situation like the present, involving two experienced insurance underwriters who bargained at arm's length." *Liberty Mut. Ins. Co.* v. *Gibbs*, 773 F.2d at 18.

Here, two sophisticated business concerns have negotiated an indemnification clause as part of a private construction contract. They chose to insert a prompt notification requirement. They did not require proof of prejudice as a condition

of its enforcement. Rules addressing the special circumstances of certain insurance policies should not be applied in these circumstances. Instead, applying traditional contract principles, we look to the language of the indemnity clause. See *Kelly* v. *Dimeo, Inc.,* 31 Mass. App. Ct. 626, 629-630 (1991).

The contractual language establishes prompt notification as a condition precedent to Bechtel's obligation to indemnify Edison. See *Massachusetts Mun. Wholesale Elec. Co.* v. *Danvers,* 411 Mass. 39, 45-47 (1991). "When construing a contract, a court looks to the parties' intent to determine whether they have created a condition precedent. To ascertain intent, a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances." *Id.* at 45-46. "[W]ords often used to create a condition precedent are 'on condition that,' 'provided that,' 'if.'" *Id.* at 46, quoting from the Restatement (Second) of Contracts § 226 comment a (1981). The indemnity clause requires Bechtel to indemnify Edison for its legal fees "provided" that Edison notifies Bechtel promptly of the claim. The parties' use of the term "provided" indicates that they intended prompt notification to be a condition precedent to Bechtel's obligation to indemnify Edison. There was no evidence before the court contradicting the plain words of the agreement.

"A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract [citations omitted]. If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced. See generally 5 S. Williston, Contracts § 663 (3d ed. 1961 & Supp. 1990); Restatement (Second) of Contracts § 225 (1981)." *Id.* at 45. Edison's failure to give Bechtel prompt notice of Cheschi's lawsuit relieves Bechtel of its obligation to reimburse Edison its costs of defending the action.[10]

---

[10]A party may be excused from complying with a condition precedent if it has proven that performance of the condition would be futile: "The law does not require useless acts." *Fortune* v. *National Cash Register Co.,* 373

In view of our decision, we need not address Bechtel's contention that the trial judge erred in calculating the amount it must indemnify Edison.[11]

The judgment in Edison's favor on liability is affirmed. The judgment for Edison against Bechtel on indemnity is reversed, and judgment shall enter for Bechtel.

*So ordered.*

---

Mass. 96, 107-108 (1977), and cases cited. See also *D. Federico Co.* v. *New Bedford Redev. Authy.*, 9 Mass. App. Ct. 141, 143-144 (1980). In this case, there is no contention that prompt notification to Bechtel would have been futile.

[11]We note, however, that Edison conceded in its brief that prejudgment interest should be calculated separately for each bill for defense costs from the date on which that bill was paid. See *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 842 (1986). During oral argument, Bechtel's attorney informed us that Edison had also conceded that Bechtel was not responsible for defense costs incurred prior to January 4, 1988, the date that Bechtel was notified of Edison's claim.