Lauriat, Peter M., J.
SAA Group, LLC (“SAA”) brought this action against Old Republic National Title Insurance Company (“Old Republic”) seeking indemnification under a title insurance policy issued by Old Republic insuring a mortgage granted to Washington Mutual Bank (“WAMU”) on property located at 415 Lindsey Street, Attleboro, Massachusetts.
Old Republic has now moved for summary judgment on SAA’s claim against it. For the following reasons, Old Republic’s summary judgment motion is allowed.
BACKGROUND
The pleadings, affidavits, and memoranda set forth the following facts.
Old Republic is a Minnesota corporation with its usual place of business in Andover, Massachusetts. SAA is a Delaware limited liability company with its usual place of business in Woburn, Massachusetts. SAA is affiliated with the Ablitt Law Offices, P.C. (“Ablitt”), of Woburn, Massachusetts.
On or about June 27, 2002, Fleet National Bank (“Fleet”) filed an Open End Mortgage in the Bristol County Registry of Deeds on property at 415 Lindsey Street in Attleboro, Massachusetts (“the Property”) that was intended to secure a $120,000 home equity line-of-credit loan it had made to Ricky and Linda Greigre. In 2003, the Greigres decided to refinance that debt with a loan from the Washington Mutual Bank (“WAMU”), to be secured by a mortgage on the Property, in an amount greater than the Fleet loan. To protect its interest, WAMU purchased a title insurance policy from Old Republic, through its agent, Lenders Title Services, Inc. (“LTS”), whose President is Suzanne Accardo (“Accardo”).
In advance of the closing, LTS obtained from Fleet the pay-off amount of $120,899, for the Greigres’ home equity loan. LTS handled the closing of the refinancing on or about Januaiy 28, 2003, and in connection therewith, recorded WAMU’s mortgage in the Bristol County Registry of Deeds. On February 4, 2003, LTS delivered a check to Fleet in the amount of $120,899 in payment of the Greigres’ home equity loan. Fleet, however, did not freeze or close the Greigres’ home equity loan, and did not send LTS a discharge of its mortgage. Fleet’s failures apparently allowed the Greigres to re-borrow $120,000 against their home equity line-of-credit within days of the closing. At some point after February of2003, Bank of America, N.A. (“BoA”) acquired Fleet.
Late in 2005, the Greigres defaulted on their WAMU loan. WAMU engaged the Harmon Law Offices (“Harmon”) to foreclose on its mortgage. In conducting a title examination on the Property, Harmon noted that Fleet’s prior mortgage had not been discharged. On November 22, 2005, Harmon advised LTS of this encumbrance on the Property, and LTS in, turn, contacted BoA. On December 12, 2005, WAMU assigned the Greigres’ Note and mortgage to DLJ Mortgage Capital, Inc. (“DLJ”). In turn, DLJ engaged Select Portfolio Services, Inc. (“SPS”) to act as its attorney-in-fact and loan servicer in connection with the foreclosure of the WAMU/DLJ mortgage on the Property. SPS engaged the law firm of Ablitt & Charlton (“Ablitt”) to conduct the foreclosure proceedings on behalf of DLJ.
On Januaiy 31, 2006, in an apparent response to LTS’s inquiry, BoA executed a Discharge of Mortgage with respect to the Greigres’ 2002 Fleet home equity line-of-credit loan, and on February 14, 2006, that discharge was recorded in the Bristol County Registry of Deeds. On February 21, 2006, BoA executed a second Discharge of Mortgage with respect to the Greigres’ 2002 Fleet home equity line-of-credit loan, and on March 6, 2006, that discharge was recorded in the Bristol County Registry of Deeds. However, at the times that these mortgage discharge notices were filed, the Greigres still owed Fleet n/k/a/ BoA at least $120,000 on their home equity line-of-credit loan.
On March 29, 2006, BOA—asserting “clerical error and mistake”—executed a Revocation of Discharge of Mortgage, which was recorded in the Bristol County Registry of Deeds on June 30, 2006.
On November 15, 2006, BOA commenced a declaratory judgment action against the Greigres, DLJ and another in the Bristol County Superior Court (the “Bristol Action”) seeking to void and revoke its discharge of the Fleet mortgage. On December 7, 2006, BOA recorded a Memorandum of Lis Pendens against *302 the Property with the Bristol County Registry of Deeds. Although Ablitt and DLJ had become aware of the Bristol Action by not later than November 20, 2006, DLJ did not take any steps to defend itself in that case.
On January 4, 2007, Ablitt, representing DLJ, sent a claim letter to Old Republic informing Old Republic that “a recent title examination for the purpose of foreclosing on the said mortgage indicates that a senior mortgage exists in favor of Fleet National Bank in the principal amount of $120,000.” The letter did not disclose, mention or reference the Bristol Action. Old Republic acknowledged receipt of the claim letter the same day, and, as a matter of course, issued a Future Policy Indemnity Letter in which it agreed to “issue a new policy to the successful bidder at the foreclosure sale . . . without exception for this problem.”
On February 8, 2007, BOA was awarded a default judgment in the Bristol Action, thereby restoring its mortgage to first position ahead of DLJ’s. Old Republic was not expressly informed of the Bristol Action by DLJ, SPS, Ablitt, or SAA until October 30, 2007. Moreover, Old Republic was not informed of BOA’s default judgment until December 12, 2007. Consequently, Old Republic was prevented from intervening in the Bristol Action and asserting a variety of viable defenses. Nonetheless, Old Republic informed DLJ that, should DLJ be successful in having the default judgment vacated, Old Republic would defend DLJ in the Bristol Action. DLJ, SPS, Ablitt, and SAA took no steps to remove the default judgment.
On or about April 15, 2008, BOA conducted a foreclosure of the Fleet Mortgage, thereby extinguishing the WAMU Mortgage. DLJ/SPS was the high bidder at the foreclosure sale and agreed to buy the properly for $150,000. Ablitt paid both the bid deposit of $5,000, and the purchase price of $150,000 on behalf of DLJ in connection with the foreclosure sale.
On January 8, 2009, DLJ executed an Assignment of Claim in favor of SAA. SAA then sought indemnification under the Old Republic policy by virtue of this assignment. Old Republic refused, and the present action followed.
DISCUSSION
A motion for summary judgment shall be granted if admissible evidence “show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c). The moving party must affirmatively demonstrate that there are no genuine issues of material fact in dispute. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “This burden . . . maybe satisfied by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Comm. Corp., 410 Mass. 805, 809 (1991). In response, the nonmoving party “must set forth sufficient facts showing that there is a genuine issue for trial.” Key Capital Corp. v. M&S Liquidating Corp., 27 Mass.App.Ct. 721, 728 (1989), quoting Mass.R.Civ.P. 56(e). A party may not rest on “conclusory statements, general denials, and factual allegations not based on personal knowledge” in opposing a motion for summary judgment. LaBrecque v. Parsons, 74 Mass.App.Ct. 766, 768 (2009).
I.
The first issue is whether Old Republic, by virtue of its refusal to pay SAA’s claim, breached the terms of its title insurance policy. “The interpretation of an insurance policy is a question of law for the trial judge and the reviewing court.” Sullivan v. Southland Life Ins. Co., 67 Mass.App.Ct. 439, 442 (2006). In construing the meaning of an insurance contract, the court must give words their fair meaning in light of the subject matter. Davis v. Allstate Ins. Co., 434 Mass. 174, 179 (2007). The court is bound to interpret an insurance contract from the “viewpoint of a reasonable insured, in order to effectuate the main manifested design of the insurer and insured. Id. at 185.
A.
In assessing whether Old Republic breached the terms of its title insurance policy, the dispositive issue before this court is whether DLJ, SPS, or Ablitt provided Old Republic with timely and effective notice of the pending Bristol Action, such that Old Republic could adequately defend SAA’s mortgage interest in that action. Paragraph Three of the Conditions and Stipulations of the title insurance policy provides in pertinent part that:
The insured shall notify [Old Republic] promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or lien of the insured mortgage ... If prompt notice shall not be given to the [Old Republic], then as to the insured all liability of the [Old Republic] shall terminate with regard to the matter or matters for which prompt notice is required.
Given the foregoing language, the court must determine whether Old Republic (1) received notice under the policy, and (2) assuming notice was not given, whether Old Republic was actually prejudiced as a result. The court concludes that SAA did not satisfy the notice requirement of the Old Republic insurance policy.
In Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980), the Supreme Judicial Court held that “where an insurance company attempts to be relieved of its obligations under a liability insurance policy not covered by G.L.c. 175, §112,[1] on the ground of untimely notice, the insurance company will be required to prove both that [(1)] the notice provision was in fact breached and [(2)] that the breach resulted in prejudice to its position.” 381 Mass. at 282 (1980); see also Darcy v. The Hartford Ins. Co., 407 Mass 481, 490 *303 (1990) (holding that “an insurer would be able to disclaim coverage because of an insured’s breach of the notice . . . provisions in a policy only if the insurer could prove that any such breach actually prejudiced its position”). Importantly, the Court noted that the basic purpose of a notice requirement is to allow the insurance company “seasonable investigation of the facts relating to litigation.” Johnson, 381 Mass. at 281. “A reasonable notice clause is designed to protect the insurance company from being placed in a substantially less favorable position than it would have been in had timely notice been provided, e.g. being forced to pay a claim against which it has not had an opportunity to defend effectively.” Id. at 282 (emphasis added).
In Darcy, the Court explained that the length of time which elapses before an insurer receives notice “will always be a relevant factor to be considered in determining whether actual prejudice has been shown by an insurer, and the longer the delay, the more likely that prejudice exists.” Id. at 486. However, the Court further stated that before an insurer denies coverage based on untimely notice, the insurer must show some other facts or circumstances that indicate that the “insurer’s interests have actually been harmed.” Id. The Court cited “loss of critical evidence, or testimony from material witnesses . ..” as examples of sufficient facts or circumstances that qualify as prejudicial. Id. Ultimately, the Court in Darcy rejected the insurance company’s argument disclaiming coverage under the policy, because although the insurer had received tardy notice of the pending lawsuit from the insured, any prejudice suffered by the insurance company was the result of the insurance company’s failure to conduct an adequate investigation. Id. at 487.
The Joint Statement of Undisputed Facts in the present case shows that Ablitt sent a “claim letter” to Old Republic on or about January 4, 2007.[2] However, the parties disagree as to the effect of this letter. Old Republic asserts that the letter did not provide adequate notice to it because the letter did not state or identify the then pending Bristol Action. Consequently, Old Republic argues that notice was not “prompt,” because it was made aware of the Bristol Action for the first time in October of 2007—nearly eleven months after DLJ itself became aware of the lawsuit.
While SAA admits that its claim letter never explicitly referenced the Bristol Action, it contends that the language was sufficient to cause Old Republic to conduct an inquiry of the claim, and that any reasonable investigation by Old Republic would have uncovered the Bristol Action.
Even construing the facts in a light most favorable to SAA, SAA’s argument is unavailing. The language of the insurance policy is clear: in the event of litigation, DLJ was required to “promptly” notify Old Republic “in writing” about any “litigation.” Implicit in the policy’s plain language is the notion that when notice is given, such notice must contain a certain level of specificity regarding the pendency of any litigation, such that Old Republic could seasonably defend DLJ’s mortgage interest. Instead, the claim letter stated only that, “A recent title examination for the purpose of foreclosing on the said mortgage indicates that a senior mortgage exists in favor of Fleet National Bank ...” The letter made no mention of, or reference to the Bristol Action.
Acceptance of SAA’s argument—that the claim letter, in conjunction with Old Republic’s duty to investigate, provided Old Republic with sufficient notice of the Bristol Action such that its refusal to pay was a breach of contract—effectively requires the insurance policy to be interpreted to mean that, upon notice of a claim, Old Republic bore the responsibility of notifying itself of any pending litigation. This clearly was not the intent of the parties. While it is true that Old Republic has a duty to investigate, under the contract DLJ had an obligation to notify Old Republic explicitly of the Bristol Action. Because the claim letter did not provide adequate notice, this court concludes, as a matter of law, that Old Republic did not receive written notice of the Bristol Action until October 30, 2007, when Old Republic received a fax from Ablitt Law referencing the lawsuit. Given that eleven months elapsed between the time when DLJ and Ablitt first learned of the Bristol Action and the time when they adequately notified Old Republic, the notice of that action was not “prompt” within the meaning of the policy.
B.
Given that DLJ was untimely in providing notice to Old Republic, it must still be shown that DLJ’s failure in this regard actually prejudiced Old Republic. Moreover, the untimely notice must have been the proximate cause of the prejudice caused to Old Republic—that is, Old Republic cannot claim prejudice through its own failure to conduct an adequate investigation. The court concludes that: (1) due to DLJ’s untimely notice, Old Republic was actually prejudiced and (2) that prejudice was not caused by Old Republic’s nonfeasance.
Old Republic contends that had it received timely notice of the Bristol Action, it would have taken steps to defend DLJ’s mortgage interest before a default and default judgment were entered in that action.[3] Old Republic asserts that due to DLJ’s failure to provide adequate notice of the suit, Old Republic was required to forfeit several defenses that it could have advanced in the Bristol Action prior to the entry of a default judgment.[4] For its part, SAA admits that these defenses were available. Thus, “(Old Republic] was placed in a ’’substantially less favorable position than it would have been in had timely notice been provided." Johnson, 381 Mass. at 282. Moreover, an insurer’s inability to advance viable legal theories, because the insured permitted a default judgment to enter prior to notifying the insurer, satisfies Darcy’s requirement *304 that there be specific “facts or circumstances” that show that the insurer has been prejudiced.
The prejudice done to Old Republic was not of its own doing. SAA incorrectly interprets the Court’s decision in Darcy to mean that regardless of whether DLJ’s claim letter contained specific mention of the pending Bristol Action, Old Republic was not justified in denying coverage under the policy because it was Old Republic’s failure to conduct a reasonable investigation that caused the prejudice.
SAA’s argument is fatally flawed. First, Darcy is factually distinguishable from the present case. There, the decision turned in part on the fact that the insurer received actual written notice of the underlying tort suit, which was still in the process of being adjudicated. 407 Mass. at 487. Consequently, the insurer still had ample opportunity to protect its interest prior to judgment, and whatever “prejudice” befell the insurer was the product of its own insufficient investigation. Id. Here, the claim letter did not disclose the existence of any underlying action. Second, even assuming that explicit written notice of a pending suit is not a condition precedent to SAA’s argument, Old Republic’s investigation was reasonable in light of the information provided. First, upon receiving the claim letter, Old Republic took steps to decipher the claim— the letter bore the incorrect date, listed the incorrect policy number, and named the wrong insured lender. Next, Old Republic immediately communicated with LTS, which had closed the WAMU mortgage loan. Then, acting on what Ablitt had communicated in the claim letter, Old Republic proceeded to issue a “Future Policy Indemnity Letter” to DLJ agreeing to issue a new policy to the successful bidder at the foreclosure sale.
ORDER
For the foregoing reasons, Old Republic National Title Insurance Company’s Motion for Summary Judgment is ALLOWED.

G.L.c. 175, §112 applies specifically to motor vehicle liability policies.

The claim letter sent by Ablitt to Old Republic was defective in several respects. According to the parties’ Joint Statement of Undisputed Facts, the claim letter bore the incorrect date (Jan. 4, 2006 instead of Jan. 4, 2007), listed the incorrect policy number, and named the wrong insured lender.

 O1d Republic did not receive notice of the Bristol Action until nearly nine months after a default judgment had been entered against DLJ in favor of Bank of America.

Among the available defenses were the following: (1) an estoppel defense based upon Bank of America’s two discharges, which were recorded with the Registry of Deeds: (2) an equitable subrogation defense based upon the fact that the DLJ/WAMU mortgage proceeds were used to pay off a then-existing first mortgage ahead of the Bank of America line of credit; (3) a defense of negligence based upon Bank of America’s failure to close out its line of credit despite receiving instructions to do so; and (4) a defense of breach of Bank of America’s agreement to close the credit line and discharge its junior mortgage.